**Goldie LAVINE, Plaintiff-Appellee,**

v.

**Philip A. SHAPIRO, Defendant-Appellant.**

**No. 12254.**

United States Court of Appeals Seventh Circuit.

July 1, 1958.

Stanford Clinton, Paul J. Miller, Chicago, Ill., Wayne R. Hannah, Jr., Chicago, Ill., for appellant.

Raymond I. Suekoff, Chicago, Ill., Morris D. Spiegel, Chicago, Ill., for appellee.

Before MAJOR, SCHNACKENBERG and HASTINGS, Circuit Judges.

MAJOR, Circuit Judge.

Plaintiff, a citizen of the State of Ohio, brought this action against defendant, a citizen of the State of Illinois, for

an accounting of rents collected by him and for judgment in such amount as might be found owing her. From a summary judgment in favor of plaintiff, in the amount of $22,492.41 and costs, rendered under circumstances subsequently related, defendant appeals.

Jacob Grosby (a brother of plaintiff) died March 30, 1955, leaving a will which was admitted to probate on May 17, 1955, by the Probate Court of Cook County, Illinois. Letters testamentary were issued thereon to defendant (a nephew of decedent and also of plaintiff) as executor. By terms of the will, decedent's property, including some forty parcels of real estate, was devised as follows: (1) to plaintiff, Goldie Lavine, 5%; (2) to Louis Grosby (a brother of decedent), 5%; (3) to the Jewish Federation of Chicago, 15%, and (4) to defendant, Philip A. Shapiro, 75%. Defendant later acquired the interest devised to the Jewish Federation and thus became the owner of a 90% undivided interest in the devised property. Defendant as conservator during the lifetime of decedent and subsequently as agent of the devisees collected rents from the devised property, for which he failed or refused to pay plaintiff her proportionate part. The facts thus related are admitted. Also, if plaintiff is entitled to recover, the amount of the judgment is not in dispute.

Decedent's will contained a provision as follows:

"In the event any beneficiary under this, my Last Will and Testament, shall *directly or indirectly* contest this will or dispute any clause or provision thereof, I direct that such beneficiary shall receive nothing hereunder and thereupon my estate shall be distributed in like manner as though such contesting beneficiary had predeceased me. [Italics ours.]"

Two will contests were filed in the Circuit Court of Cook County, Illinois, the first September 12, 1955, and the second January 30, 1956. In the first action nine nieces and nephews of decedent were parties-plaintiffs, and in the second, the three children of plaintiff who had not joined in the first contest were parties-plaintiffs. All parties-plaintiffs in both suits were adults. Plaintiff was not a party to either action. Defendant in his answer to the complaint and since relies upon two defenses: the first is that plaintiff "conspired with, aided and abetted the plaintiffs in said suits in the filing and prosecution thereof to contest the will of Jacob Grosby, Deceased, and that she thereby directly or indirectly contested the will." As a result, so it is alleged, plaintiff forfeited any interest which she took under the terms of the will. The second defense is that at the time of the commencement of the instant action there was pending in the Superior Court of Cook County certain actions which involved the same parties and subject matter, and that the District Court should have declined jurisdiction or, in the alternative, stayed the proceedings until a final determination of the actions pending in the Superior Court.

Plaintiff in support of her motion for summary judgment attached numerous documents, including (1) summary of facts; (2) discovery deposition of Philip A. Shapiro (defendant); (3) excerpts of proceedings held before the Court on June 28, 1957, and (4) summaries of the following depositions, all taken in Cleveland, Ohio, at the instance of defendant, (a) Goldie Lavine (plaintiff), (b) LeRoy Lavine, (c) Morton Lavine, (d) Jane Schiffer ((b), (c) and (d) adult children of plaintiff), and (e) H. H. Felsman (attorney). Defendant also submitted an affidavit in support of his answer in opposition to the motion for summary judgment.

A narration of all that has occurred in this rather protracted proceeding would unduly prolong this opinion and serve no useful purpose. In view of the contention, however, that a material issue of fact existed which could not properly be disposed of on plaintiff's motion for summary judgment, some statement of facts is required. We have decided to utilize such statement as it appears in defendant's brief. We do this even though it

may in some respects be more favorable to defendant than the record justifies. Some further identification of persons will make such statement more understandable. As already noted, plaintiff was a sister and Louis Grosby a brother of the decedent and each, under the will, took a 5% interest in the estate. Also as already noted, LeRoy Lavine, Morton Lavine and Jane Schiffer, parties-plaintiffs in the second will contest, were children of plaintiff and nephews and niece of the decedent. Nine other nephews and nieces of decedent were parties-plaintiffs in the first will contest. These parties were represented by Attorney Nathan S. Blumberg. Louis Grosby, a brother of the decedent, who took a 5% interest under the will, was represented by Attorney Sol A. Hoffman. H. H. Felsman, an attorney of Cleveland, Ohio, is a relative of plaintiff and her children. For years he had been plaintiff's legal advisor and was her attorney relative to at least some phases of the rights which accrued to her under decedent's will.

Defendant's statement of facts as contained in his brief, with our insertion of explanatory notes in parentheses, is as follows:

"In preparation of this case for trial defendant took the depositions of plaintiff and her three children, Morton Lavine, LeRoy Lavine and Jane Schiffer, her attorney and brother-in-law, H. H. Felsman, and of attorneys Nathan Blumberg and Sol Hoffman. Plaintiff, her children and her attorney denied that plaintiff had any part whatsoever in contesting Jacob Grosby's will. However, the following facts were elicited from the various deponents.

"Within a few weeks after Jacob Grosby's death, plaintiff asked H. H. Felsman to represent her in connection with the estate of Jacob Grosby. Mr. Felsman, a brother-in-law of plaintiff, had been plaintiff's personal attorney for several years and was affectionately known to her children as 'Uncle Bob.' Shortly thereafter, plaintiff, her children, Jane Schiffer, LeRoy Lavine and Morton Lavine, met with Mr. Felsman at plaintiff's

home. Plaintiff admitted that Felsman acted as her attorney at that meeting. Mr. Felsman read the two wills of Jacob Grosby, a 1940 will and the 1954 will, which was finally admitted to probate. On hearing the provisions of the 1954 will, plaintiff and her three children 'were very indignant.' Plaintiff was 'very hurt.' She was 'aggravated, disgusted and heartsick.' She felt that Mr. Shapiro (defendant) had tricked Jacob Grosby into making the 1954 will. She said that the disposition was unfair, that:

" 'Philip Shapiro must have connived, conspired to bring about the will and that was not her brother Jack's way of doing things, and that her brother Jack was a very Orthodox person in our religion and an Orthodox person does not make a will for fear of death and that Philip Shapiro and my Uncle Jack were not that close, that Philip Shapiro was always a parasite and leech.'

LeRoy Lavine, Morton Lavine and Jane Schiffer, at this same meeting and in plaintiff's presence, also condemned Philip Shapiro and indicated their belief that the 1954 will was not Jacob Grosby's.

"At the time the will was read, the family, in plaintiff's presence, discussed whether plaintiff would be better off under the first (1940) or second (1954) will. LeRoy thought his mother would be better off under the first will. (This statement was not made in the presence of plaintiff.) Mr. Felsman also asserted, at a later date, that plaintiff would have profited had the 1954 will been upset. (This statement was made by Felsman in November 1956, months after both will contests had been settled.)

"A week or ten days after the reading of the will, the children retained Mr. Felsman to contest Jacob Grosby's will. Mr. Felsman subsequently selected the Illinois firm of Winston, Strawn, Smith and Patterson to conduct the contest. This firm reported back to Mr. Felsman, and Mr. Felsman also shared in the fee paid by the children for legal services.

"In the latter part of April or the beginning of May, 1955, Mr. Felsman arranged a meeting in Chicago with Louis Grosby (who was also given a 5% interest under the will of Jacob Grosby) and his attorney, Sol Hoffman. Mr. Felsman came into Mr. Hoffman's office and said 'he represented Goldie Lavine; that he had in his possession both wills, * *.' Mr. Felsman said 'he thought that this will [1954 will] was a terrible document. He would do whatever he can to upset it.' He talked to Mr. Hoffman about what part Mr. Hoffman 'would play in it, and whether or not [they] could cooperate.' He said 'that he thought that this will [1954 will] would not stand up.' Mr. Felsman also told Mr. Hoffman that he had 'gotten some data * * * about his [Jacob Grosby's] mental capacity, and the people who would testify against— the will.' Mr. Felsman was 'eager to gather information with a view toward filing a contest * * *.' He 'talked about gathering evidence to prove the incapacity of the decedent and about our [Hoffman and Felsman] working together in connection with it.' Mr. Hoffman further testified that the 'tenor of all the conversations' which he had with Felsman 'all related to the same subject matter, and he was really asking me what information I had to furnish him and what I was going to do. * * * [F]or the purpose of preparing a will contest.'

"On May 17, 1955, Felsman was present at the offer of the will for probate. He was present in court 'on behalf of Goldie Lavine.' (Felsman took no part in this proceeding.) That day, after the court proceedings, he went to the office of Mr. Nathan Blumberg (who represented the nieces and nephews who contested Jacob Grosby's will in a separate suit) and, at a conference 'talked generally about what we had in mind here as a basis for the contest, what the further proceedings would be in behalf of those various persons whom we represented.' At this conference Mr. Felsman declared that he represented Goldie Lavine. (This conference was prior to the time that Felsman was retained by plaintiff's children.)

"In November or December of 1956, Mr. Felsman and Morton Lavine attended a meeting in Chicago at the offices of Pritzker, Pritzker & Clinton. They sought to obtain data for an evaluation of plaintiff's interest in the estate of Jacob Grosby. Morton Lavine specifically stated that he was at the meeting on his mother's behalf, that he discussed the meeting with his mother, and that 'Mr. Felsman reported back' to plaintiff after the meeting. At this conference Mr. Felsman said 'that it would have been better if the will had been knocked over, that [Philip Shapiro] took advantage of an old man * * * and that Goldie would have profited to a much greater extent if the will had been knocked over than she would get under the will, and that it should have been upset * * *.' (This conference took place some six months after both will contests had been settled.)"

Other facets of the proceedings perhaps should be mentioned, even though their pertinency is in doubt. On May 23, 1956, both will contests were settled and the suits dismissed upon payment by defendant of a total of $560,000, or $40,000 to each (other than defendant) of the living nieces and nephews of decedent. In the latter part of 1956, after the will contest had been settled, a meeting was had in the office of the attorneys for defendant, attended by such attorneys, defendant and Felsman, who represented plaintiff. There was some controversy as to the amount due plaintiff, at which time defendant in effect stated, "Therefore, let them stew. I won't pay them the money until the highest court of Illinois tells me to."

On June 14, 1957, the discovery deposition of defendant was taken by plaintiff. Defendant, a practicing lawyer, at that time stated that he had no information that plaintiff, directly or indirectly, contested the will, but that he had been told by his attorneys that in their opinion she had done so. He refused to state

any facts which had been related to him by his attorneys, on the basis that the communication was privileged. He also stated that he had no personal knowledge which would support the allegations of his answer that plaintiff conspired with certain persons in the prosecution of the will contest. Again he refused to divulge any information received from his attorneys relative thereto, on the basis that it was privileged. At the same hearing, one of defendant's counsel stated:

"We are not relying on Shapiro's statement as such. There are other facts and evidence which give us considerable confidence in our position and we assume that we have the burden upon the trial and that we will be prepared to introduce such evidence when the trial is held."

On June 25, 1957, plaintiff presented to the Court a motion to compel defendant to answer questions which he had refused to answer on the taking of his deposition. This motion was set for hearing three days later, at which both plaintiff and defendant were represented by counsel. In the lengthy colloquy which took place between Court and counsel for the respective parties, it was admitted by defendant's counsel that defendant possessed no factual knowledge of any activities on the part of plaintiff relevant to her participation in the will contests. Upon insistence by the Court that defendant's counsel furnish the names of the witnesses by whom the defense proposed to sustain his contention, the only witnesses named were plaintiff, her three children and their attorney, Felsman. Counsel for defendant stated, "We are going to prove it by your witnesses. That is the only way we can prove it."

On September 23 and 24, 1957, defendant, at Cleveland, Ohio, took the depositions of plaintiff, her three children and Felsman. As conceded by defendant (see statement heretofore quoted), "Plaintiff, her children and her attorney denied that plaintiff had any part whatsoever in contesting Jacob Grosby's will." It may be added that their deposition testimony discloses as a fact that plaintiff attended only one meeting with reference to decedent's will. That was the meeting with her three children and Felsman prior to the admission of the will to probate. At that meeting Felsman read a copy of the will and was retained by plaintiff to represent her only in the securing of her interest under the will. Plaintiff at no time had any other conferences with her children or had anything to do with their will contest suits, and she at no time authorized Felsman to engage in any activities in her behalf in connection with the will contest subsequently filed by her children. At the deposition hearing the parties stipulated that the depositions were "to be usable not only for the purposes of discovery, but for purposes of evidence upon trial at the unlimited discretion and election of the parties to these respective proceedings." It was further stipulated at the insistence of defendant's counsel, "The original of these depositions should be transmitted to the Clerk of the United States District Court in accordance with the Federal Rules of Civil Procedure."

On November 1, 1957, after the Cleveland depositions had been filed with the Court, plaintiff filed her motion for summary judgment, supported by affidavits as heretofore noted. Defendant was allowed twenty days to plead to plaintiff's motion for summary judgment and the matter was set for hearing on December 6, 1957. On November 21, 1957, the due date for defendant's answer, he moved the Court for an extension of time to December 16, 1957, to answer plaintiff's motion, for the purpose of taking the depositions of Blumberg, Hoffman and one Herbert Grosby (a distant relative of the parties, from Indianapolis, Indiana). The request was granted and defendant's time to answer plaintiff's motion for summary judgment was extended to December 12, 1957, and the matter re-set for hearing on December 20, 1957. The depositions of Blumberg and Hoffman were taken on December 6, 1957, and duly filed in Court. The deposition of Grosby was taken in Indianapolis on December 9, 1957, but for some unexplained

reason was not filed until after the entry of the instant judgment. Defendant's statement of facts, previously set forth, contains his version of the testimony given by Blumberg and Hoffman. In addition to what is there shown, it might be added that they both testified that they had never met plaintiff and had no knowledge of any activity on her part in relation to the will contest filed by her children.

On December 12, 1957, defendant filed his answer in opposition to the motion for summary judgment. Nothing was filed in support of this answer other than an affidavit by defendant. The affidavit is as innocuous as an astute lawyer could hope to prepare. Defendant, after divulging that he is a party to the suit, refers to a meeting held in the office of one of the attorneys, which evidently was that which took place in November or December 1956, long after both will contest suits had been settled. At this meeting, so it is alleged, defendant heard Felsman make a statement to the effect that plaintiff would have benefited if the 1954 will had been set aside. Defendant proceeds to relate matters of which he had been advised by his attorneys, to the effect that if a hearing was had, evidence might be developed relevant to the issue in dispute, that such information is in possession of plaintiff, her family and counsel, and that further investigation will be required to obtain information relevant to the issues raised by the motion for summary judgment.

On December 20, 1957, the Court heard oral argument on the motion for summary judgment, took the matter under advisement and ordered the parties to file briefs by December 26, 1957. On the latter date briefs were filed, and the Court, on December 30, 1957, entered summary judgment in favor of plaintiff, from which defendant appeals.

In our view, the summary judgment in favor of plaintiff was properly allowed. It is evident, so we think, from the proceedings which we have set forth that there existed no material issue of fact. There is not a scintilla of proof that plaintiff took any part, directly or indirectly, in the contest of decedent's will. The record is crystal clear that she was aware of the no-contest provision of the will, and both she and her attorney carefully refrained from any act which might jeopardize her legacy. Defendant's extended effort to show otherwise is reminiscent of a fishing expedition, conducted with the hope that at some time and in some manner he may be able to obtain some proof. After all the proceedings which have been had, he wants a trial on the issue relevant to the no-contest provision of the will, without any showing that he has or ever will have any material evidence in support of his contention. He still indulges in the speculation, and nothing more, that by a trial something may be developed by another cross-examination of plaintiff, her children and Felsman, all of whom were submitted to a rigorous cross-examination at the time defendant took their depositions. Defendant has had ample opportunity to investigate and develop any facts which might aid his cause. He has developed nothing, and his argument here for a trial is based on nothing more than an anemic hope.

While hardly necessary, perhaps we should make a few observations on some of the points argued by defendant. It is claimed that plaintiff and the children, as shown by their statements, were hostile to defendant and thought that he had taken advantage of decedent by inducing him to make the will in controversy. Plaintiff, however, had a right to express her feeling of hostility as well as her opinion of defendant in any way, at any place, at any time she saw fit, without being vulnerable to the charge that she directly or indirectly aided in the contest of the will. Another point much labored is that Felsman was also incensed at defendant's conduct and interested himself in the will contest. However, the record is plain, in fact undisputed, that his activity in this respect was as attorney for the children and not for plaintiff. Under the circumstances, we know of no theory upon which his statements and activities

can be attributed to her. Assuming that he was a competent attorney, and we have no reason to think otherwise, it is reasonable to believe that he advised plaintiff against jeopardizing her legacy by taking any part in a will contest, directly or otherwise. The fact that he represented plaintiff as a legatee and her children as contestants may raise a question of legal ethics, but it constitutes no proof that he was engaged in a conspiracy with plaintiff and it furnishes no basis for the contention that plaintiff was bound or obligated by his activities made on behalf of the children as contestants.

We, of course, agree with defendant that the words "directly or indirectly" must be given effect, but we think it unnecessary in the instant situation to attempt to define the precise area which they encompass. In our view, to contest "indirectly" connotes as a minimum some affirmative action either by word or deed. The cases upon which defendant relies are consistent with this view, in fact, they support it. Kayhart v. Whitehead, 77 N.J.Eq. 12, 76 A. 241, affirmed 78 N.J.Eq. 580, 81 A. 133; In re Stewart's Will, Sur., 5 N.Y. S. 32; Donegan v. Wade, 70 Ala. 501. In the Kayhart case, the legatee among other things actively assisted the contestant in securing witnesses and entered into a written agreement that she would pay the contestant's legacy if he did not succeed in overthrowing the will. In the Stewart case, the legatee also entered into a written agreement to reimburse the contestant for expenses incurred in the contest. In the Donegan case, the legatee directed the issuance of subpoenas and not only assured contestant's attorney that he would be paid for his services but supplied the money for that purpose. In the instant case, there is not only a failure of proof that plaintiff committed any affirmative act in connection with the will contest but there is direct, uncontradicted evidence to the contrary.

Defendant does not and could not claim that there was any issue of material fact before the court arising from direct proof. His contention that summary judgment was improper and that he was entitled to a jury trial is bottomed entirely upon what he calls an inference arising from the proof. This inference, so it is argued, arises from the relationship of the parties, together with the dissatisfaction which plaintiff, her children and their attorney expressed concerning the provisions of the will. In face of the direct evidence to the contrary, we think no such inference could be tolerated either by a court or a jury. Closely related is also the contention that defendant is entitled to a jury trial where the credibility of the testimony of plaintiff, her children and their attorney may be weighed, on the theory that plaintiff's participation in the contest is a matter peculiarly within their knowledge. We have examined the cases cited in support of this theory and find them without application. As illustrative, we refer to the case of Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967. In that case, the affidavits submitted in support of defendant's motion for summary judgment contained opinion evidence by experts who were officers of the moving party. In addition, the testimony by the same experts in another proceeding had been repudiated by a jury. As is stated in the headnote in that case (321 U.S. at page 620, 64 S.Ct. 724):

> "Summary judgment under Rule 56 of the Rules of Civil Procedure should not have been granted defendant solely upon opinion affidavits of experts who either were officers of defendant or whose interests with respect to the subject matter of the litigation were similar to that of defendant, and who had given like testimony at a previous trial of the cause wherein a jury had found contrary to their testimony."

Thus, the situation there was far different from that here where the judgment is supported by direct, positive and uncontradicted evidence.

Defendant contends that under Rule 56(f) of the Federal Rules of Civil Pro-

cedure, 28 U.S.C.A., summary judgment should not have been entered because he was entitled to further time to investigate and explore the situation. We have heretofore set forth and need not repeat the proceedings which took place prior to the entry of the judgment, as well as the matters which were before the Court at that time. It is sufficient to state that defendant's contention on this point is devoid of all merit. The fact is that the Court accorded defendant every opportunity to make good upon his oft repeated promise that his attorneys would at some undisclosed time and in some unknown manner obtain evidence relevant to the material factual issue of the case. The Court quite properly, so we think, decided that it was time to bring the protracted proceeding to a conclusion.

Defendant's second defense is based upon the allegation in his answer, "that there are other actions pending in the State Court of Cook County, Illinois, entitled Shapiro v. Anderson, cause No. 47S 10494; Goldie Lavine v. Charles Weinfeld, cause No. 57S 7542; and Goldie Lavine v. Philip A. Shapiro, et al., No. 57S 7505, in each of which the issue as to whether plaintiff owns a 5% interest in real estate devised by Jacob Grosby, Deceased, is in issue. The Superior Court of Cook County has had jurisdiction of the issue as to ownership of real estate devised by said Jacob Grosby, Deceased, under the terms of his will in each of said cases, in each of which the Superior Court of Cook County had jurisdiction prior to the time plaintiff's complaint herein was filed." By reason thereof it is argued, rather feebly, that the Superior Court having first acquired jurisdiction, the District Court should have declined jurisdiction or, in the alternative, stayed the proceedings pending adjudication by the State Court. It will be noted that the nature of the proceedings in the State Court is not revealed other than that the ownership of plaintiff's 5% interest is involved and that in all the cases referred to in the answer there are either additional parties or different parties to those of the instant action.

Defendant in support of his contention on this point relies upon Princess Lida of Thurn and Taxis v. Thompson, 305 U. S. 456, 59 S.Ct. 275, 83 L.Ed. 285. A study of that case is convincing that it is of no aid to defendant. The instant action is *in personam,* the judgment entered is for the payment of money. There can be no doubt, in fact it has been recognized throughout the litigation, that plaintiff acquired ownership of 5% of decedent's property.

In the Thompson case the Court stated (305 U.S. at page 466, 59 S.Ct. at page 280):

"* * * it is settled that where the judgment sought is strictly *in personam,* both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as *res judicata* in the other."

The Court on the same page lays down the rule that where two suits are *in rem,* or *quasi in rem,* the jurisdiction of the Court in which the first action is commenced must be recognized. Referring to such rule, the Court makes the following statement, which we think pertinent to the instant situation (305 U.S. at page 466, 59 S.Ct. at page 281):

"While it has no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in the possession of a state court, this is not such a case."

We find no justification for a reversal of the judgment. It is, therefore, affirmed. The costs of this appeal are taxed to defendant, including the cost of printing the appendix to plaintiff's brief.