295 F.2d 573
 George H. MOUTOUX, Carl J. Moutoux, Lucille M. Moutoux,
Elise M. Trautvetter, William J. Moutoux, Partners
d/b/a Moutoux Auto and Machine Co., Plaintiffs,
v.
GULLING AUTO ELECTRIC, INC., and Holley Carburetor Co.,
Inc., Defendants.
 No. 13200.
 United States Court of Appeals Seventh Circuit.
 June 15, 1961, Rehearing Denied Nov. 28, 1961.
 
 1
 James D. Lopp, Evansville, Ind., for appellants.
 
 
 2
 Harry T. Ice, Indianapolis, Ind., N.A. Miles, Warren, Mich., James E. Hawes, Jr., Indianapolis, Ind., for defendants-appellees, Holley Carburetor Co., and Gulling Auto Electric, Inc., Ross McCord Ice & Miller, Indianapolis, Ind., of counsel.
 
 
 3
 Before KNOCH and CASTLE, Circuit Judges, and MERCER, District Judge.
 
 
 4
 MERCER, District Judge.
 
 
 5
 Plaintiffs filed this suit against defendants, Gulling Auto Electric, Inc., and Holley Carburetor Company, alleging that defendants had conspired together to monopolize the distribution and fix prices for the sale of Holley products in Indiana and a part of western Kentucky. They appeal from a summary judgment for defendants dismissing their complaint. Hereinafter, for convenience, the parties are referred to as plaintiffs and defendants. When the context requires a reference to the individual defendants, they are referred to as Gulling and Holley.
 
 
 6
 Plaintiffs are wholesalers and distributors of automobile replacement parts doing business at Evansville, Indiana. Holley is a manufacturer of automotive engine carburetors, distributors and other ignition parts.
 
 
 7
 The complaint was founded upon the provisions of the Clayton and Sherman Anti-Trust Acts, 15 U.S.C.A. 1 et seq. It alleges that plaintiffs and Equipment Service Company of Indianapolis, Indiana, had been distributors of Holley products in Indiana, with plaintiffs' territory including a part of western Kentucy; that, pursuant to an agreement and conspiracy, Holley cancelled plaintiffs' and Equipment Service's contracts and thereafter refused to sell its products to plaintiffs; that Holley entered into a monopoly arrangement with Gulling, whereby only Gulling could purchase Holley's products for distribution in Indiana; that defendants, by agreement, have established and maintain a fixed price level for Holley products sold in interstate commerce in Indiana and a part of the state of Kentrucky; and that, as a result of the agreement and arrangement between defendants, plaintiffs have been deprived of business and good will of a substantial value. The complaint prayed injunctive relief and treble damages based upon alleged injury in the amount of $500,000.00.
 
 
 8
 Defendants, by their respective answers, denied generally the material allegations of the complaint.
 
 
 9
 Thereafter, interrogatories were filed and answered by the respective parties. The deposition of George Moutoux, business manager for plaintiffs, was taken by the defendants. Plaintiffs took the depositions of certain officers and agents of both Holley and Gulling.
 
 
 10
 Defendants moved for summary judgment, relying upon the pleadings, the answers to interrogatories, the deposition of Moutoux, the depositions of officers and agents of the defendants and the affidavit of W. E. Bailey, who had been, prior to February, 1959, the service sales manager of Holley, to show that no genuine issue of fact remained for trial.
 
 
 11
 A hearing was held on the motion for summary judgment, the admissions and the supporting evidentiary documents after which the court granted defendants' motion and entered judgment in their favor dismissing the cause of action.
 
 
 12
 Upon reviewing this record, it appears that the question whether summary judgment was properly entered in this case is a close one because of facts which are not controverted as follows.
 
 
 13
 A major part of Holley's manufactured products is sold to automobile and truck manufacturers for installation as original equipment on new automobiles and trucks. A smaller part of its carburetors and distributors are sold in the 'after market', i.e., as replacement and repair parts for worn out equipment on motor vehicles. Only the latter category of Holley's business is involved in this litigation.
 
 
 14
 At all times material to this suit, Holley has sold its after market products only to franchised central distributors, sometimes hereinafter referred to as centrals. The centrals, in turn, have sold Holley products at a mark-up to local wholesalers and to retail outlets. In either event, the replacement parts ultimately reached the consuming public through garages, service stations and other retail outlets.
 
 
 15
 On October 3, 1949, plaintiff became a central distributor for Holley in an area which initially included the southern part of Indiana, a part of northwestern Kentucky and a part of southeastern Illinois. From time to time that franchise area was reduced until, as of the time when plaintiff's franchise was cancelled as hereinafter related, plaintiff's area included only its Indiana territory and two counties in northwestern Kentucky. The agreements under which plaintiff operated as a central distributor for Holley provided that the distributorship arrangement would remain in force for an indefinite period, but could be terminated by either party by thirty days written notice given to the other.
 
 
 16
 On November 3, 1958, Holley notified plaintiff and Equipment Service that their respective distributorship agreements were cancelled, effective January 1, 1959. On the same date, Holley notified Gulling that it was being appointed central distributor for Holley products, with a designated distributorship territory covering all of Indiana except three northern counties which were adjacent to the City of Chicago.
 
 
 17
 After cancellation of its central distributorship franchise, plaintiff returned part of its inventory to Holley and received credit therefor. The balance of its inventory was retained and marketed. Plaintiff submitted a number of orders to Holley after January 1, 1959, all of which Holley refused to fill. Thereafter, on May 28, 1959, the instant suit was filed.
 
 
 18
 At all times material to this litigation, Holley furnished price lists for its products to its central distributors. Holley insists that its lists, prior to January 1, 1959, were suggested retail price lists-- that its sales to centrals were at a discount from that list. Moutoux's deposition supports that characterization of the lists to the extent of his testimony, that plaintiffs, as a Holley central, did not consider themselves bound by that list in the sale of Holley products. Subsequent to January 1, 1959, Holley characterizes its pricing practices as sales to centrals at a manufacturer's list price, with each central being furnished separate suggested wholesale and retail price lists.
 
 
 19
 Thus, on the surface, it appears that the situation presented involves only the decision of a manufacturer to cancel one distributorship pursuant to the provision of its contract with plaintiff and to establish another. A statement to that effect is the crux of the affidavit of Bailey, in which he states that plaintiff's contract was cancelled in favor of the Gulling distributorship because Holley's sales department determined that Indianapolis, not Evansville, was the major market center for the Indiana area.
 
 
 20
 The closeness of the question of the propriety of this judgment is enhanced by the testimony of Moutoux, as contained in his deposition, from which it appears that plaintiffs may have extreme difficulty in sustaining their allegations of a conspiracy and monopolistic practices.
 
 
 21
 Issues of fact are, however, clearly drawn by the pleadings. The pleadings in the case at bar presented issues as to the existence of a conspiracy by the defendants to monopolize the trade in Holley's products in the State of Indiana and to fix the price at which Holley products could be sold. From the depositions of Holley's officers it appears that the distribution and pricing issues may be affected by discussions and agreements between Holley and two of its competitors, Carter Carburetor Company and The Electric Autolite Company, geared to the parallel and coordinated distribution and pricing of auto replacement parts in the Indiana area. The most that can be said for the proof submitted by defendants in support of their motion for summary judgment is that the evidentiary matters submitted create a doubt that plaintiffs will, upon a trial of the case, be able to sustain the material allegations of their complaint.
 
 
 22
 Upon reviewing the whole record, we are convinced that the uncontroverted facts as above related and the doubt created as to plaintiffs' ability to prove their cause of action do not, as a matter of law, set at rest the material factual issues. Irrespective of the doubt created, plaintiffs are entitled to the opportunity to submit this proof in support of the complaint at a trial.
 
 
 23
 While Rule 56 does contemplate that 'the allegations of fact in the pleadings may be pierced' by admissions, depositions and affidavits which show, in fact, that no genuine issues of fact exist. Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 179 F.2d 265, 267, unless such evidentiary matters submitted in a particular case clearly show 'that there was no issue of fact to be tried', the court 'is not permitted to try on the affidavits submitted an issue of fact which is presented by the pleadings.' Campana Corp. v. Harrison, 7 Cir., 135 F.2d 334, 335-336. If, upon the proofs adduced in support of a motion for summary judgment, any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant for summary judgment and the motion for summary judgment must be denied. Mitchell v. Pilgrim Holiness Church Corp., 7 Cir., 210 F.2d 879, certiorari denied 347 U.S. 1013, 74 S.Ct. 867, 98 L.Ed. 1136; Shafer v. Reo Motors, 3 Cir., 205 F.2d 685; Arnstein v. Porter, 2 Cir., 154 F.2d 464; Weisser v. Mursam Shoe Corp., 2 Cir., 127 F.2d 344, 346, 145 A.L.R. 467; to the same effect, Preston v. Aetna Life Ins. Co., 7 Cir., 174 F.2d 10, certiorari denied 338 U.S. 829, 70 S.Ct. 80, 94 L.Ed. 504.
 
 
 24
 Defendant's reliance upon the line of cases of which Lavine v. Shapiro, 7 Cir., 257 F.2d 14, and Repsold v. New York Life Ins. Co., 7 Cir., 216 F.2d 479 are representative is misplaced.
 
 
 25
 In Lavine v. Shapiro, 7 Cir., 257 F.2d 14, a suit by a joint owner of property against another joint owner for rents, the material allegations of the complaint, including the allegations as to amount due, were admitted by the defendant's answer and by admissions in pre-trial proceedings. The only controverted issue was the validity of a defense pleaded to the claim. Pre-trial procedures in the case revealed that defendant could prove his defense only by the testimony of plaintiff, plaintiff's children and plaintiff's attorney. The deposition of each of those persons had been taken. As submitted in support of plaintiff's motion for summary judgment, these depositions revealed that each of them would testify adversely to defendant's claimed defense. Under those circumstances, the court imposed the burden upon the defendant to make some showing that he could, if the case were tried, support his claimed defense by competent evidence. A similar situation was presented in Dyer v. MacDougall, 2 Cir., 201 F.2d 265, wherein depositions of the persons upon whom the plaintiff would rely to sustain his complaint for libel and slander revealed that each would testify adversely to his cause.
 
 
 26
 The rights of the parties in Repsold v. New York Life Ins. Co., 7 Cir., 216 F.2d 479; Bruce Const. Corp. v. United States, 5 Cir., 242 F.2d 873, and Chambers & Co. v. Equitable Life Assur. Soc., 5 Cir., 224 F.2d 338, were fixed by written contracts, from which it appeared that no material facts were controverted.
 
 
 27
 We conclude that issues of material fact remain for decision in the case at bar and that the trial court erred in granting defendants' motion for summary judgment. The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.
 
 
 28
 KNOCH, Circuit Judge (dissenting).
 
 
 29
 Regretfully, I find myself in disagreement with the conclusion of Judge MERCER'S otherwise excellent analysis of this case.
 
 
 30
 As Judge MERCER states, Moutoux's deposition supports Holley's characterization of its lists as mere suggested price lists. According to Moutoux, plaintiffs never considered themselves bound by these suggested prices while they functioned as a Holley central. There is no indication of evidence to show any basic change in the character of the subsequent lists.
 
 
 31
 It further appears to me that Moutoux's deposition indicates not only the extreme difficulty, to which Judge MERCER refers, but a sheer impossibility of sustaining plaintiffs' allegations of conspiracy and monopolistic practices.
 
 
 32
 I would affirm the judgment of the District Court.