BEER, SOFT DRINKS, WATER, CARBONIC GAS & LIQUOR SALES DRIVERS, HELPERS, INSIDE WORKERS, BOTTLERS, WAREHOUSEMEN & GENERAL PROMOTIONAL REPRESENTATIVES, LOCAL NO. 744, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Plaintiff,

v.

VIERK CORPORATION, Defendant-Counterplaintiff,

v.

BEER, SOFT DRINKS, WATER, CARBONIC GAS & LIQUOR SALES DRIVERS, HELPERS, INSIDE WORKERS, BOTTLERS, WAREHOUSEMEN & GENERAL PROMOTIONAL REPRESENTATIVES, LOCAL NO. 744, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Counterdefendant.

No. 81 C 6959.

United States District Court, N.D. Illinois, E.D.

Oct. 21, 1982.

---

Marvin Gittler, Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Ltd., Chicago, Ill., for plaintiff.

R. Clay Bennett, Bettye S. Kitch, Lee C. Shaw, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-counterplaintiff.

## OPINION AND ORDER

BUA, District Judge.

This case is brought under Section 301 of the Labor-Management Relations Act, 29

U.S.C. 185. Jurisdiction is based on Section 301(a). Venue is proper under 28 U.S.C. § 1391.

## FACTS

Plaintiff (the "Union") is an unincorporated labor organization whose principal office is located in Chicago, Illinois. Defendant (the "Employer") is an Illinois corporation having its offices in Harvey, Illinois. Defendant's business is the distribution of beer, primarily by the case.

Plaintiff and Defendant entered into a collective bargaining contract (the "agreement") effective from May 1, 1979 to April 30, 1982. The agreement sets out, *inter alia,* a detailed grievance procedure to be followed in the event that a grievance should arise. Under this procedure, set out in Article 47, any grievances relating to the discharge of an employee must be presented within five working days after the grievance arises. Upon notice of the grievance, the Employer and the Union have five working days to meet and reach a settlement regarding the matter. Should such a settlement not be reached within the time allotted, the matter is to be submitted to a Joint Committee comprised of two representatives of the Employer and two representatives of the Union. The Joint Committee is required to meet within seven days of notification of the matter and is required to reach a decision within three days thereafter. If the Joint Committee is deadlocked, the matter is, on election of either party, submitted to an arbitrator selected according to agreed upon procedures. The conclusions of the Joint Committee and the arbitrator are final and no strike or lockout is permitted pending a final determination.

The agreement further provides in Article 33, § 1(e), that no assigned distributor route shall be discontinued where an average of at least 1,000 cases per week have been sold during the preceding four-week period.

Vierk Corporation was formed in 1977 when Vierk Distributing acquired the rights to distribute additional brands of beer in the south suburbs of Chicago. Employees who previously had worked at Vierk Distributing were employed by Vierk Corporation to handle the new routes.

The makeup of Vierk Corporation is very similar to that of Vierk Distributing. The two have common physical facilities and within such facilities do not segregate their operations except by brand of beer. Further, numerous individuals, including the General Manager, the Warehouse Supervisor, and various clerical workers and mechanics hold identical positions with both companies. Finally, both companies are owned by the same individuals, the Vierk family, and share corporate officers.

It was decided that Vierk Corporation would shut down operations and transfer its routes to Vierk Distributing in late October, 1981. Apparently, having two separate entities was not as profitable as had been hoped. However, at no time did any of the seven Vierk Corporation routes fall below a delivery rate of 1,000 cases per week.

Before Vierk Corporation was closed, company and union officials met to discuss the proposed closing and the assumption of Corporation's routes by Distributing. At this time the Union refused to consent to any such action as Vierk Corporation's volume on the routes had not fallen below the base amounts specified in the agreement. In the meantime, Vierk Corporation employees were notified of the impending shutdown and that Distributing would be holding interviews for positions there.

The parties again conferred on October 28, 1981. Again, no agreement was reached. On the same day, a grievance was filed against Vierk Corporation for terminating the employees in violation of the agreement. As the Employer and the Union had been unable to reach an agreement in the prior meetings, a meeting of the Joint Grievance Committee was called and was held on October 30, 1981. At the meeting, Thomas Higgins, General Manager of both Vierk entities, presented the case for the company. In accord with general Committee policy, no attorneys were present at

this meeting. Furthermore, no transcript of the proceedings was made.

At issue at the meeting was whether termination of the fourteen Vierk Corporation employees was in violation of Article 33, § 1(e) of the agreement. The Union argued that the agreement had been violated and that the closing of the Vierk Corporation was a subterfuge to circumvent the agreement. The company admitted that no routes had fallen under 1,000 cases per week as required by the agreement and that Vierk Distributing intended to assume the routes then held by Vierk Corporation as well as the distribution rights to the latter's brands. Finally, the company stated that it would hire six of Vierk Corporation's employees to cover Distributing's new business.[1]

By unanimous decision, the Joint Committee decided to uphold the grievance, thereby determining that should Vierk Corporation follow through with the terminations of the employees, it would be in violation of the agreement. Notwithstanding this determination, however, no remedy was stated in the decision. By letter of November 2, 1981, Vierk was formally notified of the Committee's decision. Prior thereto, on October 30, 1981, at the end of business hours, the layoffs were effective and the business of Vierk Corporation was terminated.

The parties have filed cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, in its motion, urges the Court to rule that the determination of the Joint Grievance Committee is valid, complete, and must be enforced by the reinstatement of the terminated employees and the payment of back pay. Defendant, on the other hand, requests the Court to uphold the determination of the Committee as written, that is, without remedy, or in the alternative, to vacate the decision of the Joint Grievance Committee. It is argued by defendants that the decision to close Vierk Corporation and to terminate its employees was a valid business decision and did not violate the agreement.

For the reasons stated herein, the Court grants the parties' motions for summary judgment upholding the determination of the Joint Grievance Committee and *sua sponte* remands the cause to the Committee for the provision of a remedy under the agreement. Defendant's motion for summary judgment vacating the determination of the Committee is denied.

Under Rule 56, the Court is directed to render a judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Any doubt as to the existence of any material fact shall be resolved against the moving party. *Moutoux v. Gulling Electric Co.*, 295 F.2d 573, 576 (7th Cir. 1961). After consideration of the materials on file in the instant case, the Court finds that no issue of material fact remains and that summary judgment must be entered as a matter of law.

Before the Court are three primary issues. First, the Court is asked to consider whether Vierk Corporation and Vierk Distributing constitute a single employer such that the determination by the Board that a violation of the agreement by Vierk Corporation could be enforced against Vierk Distributing, given that the entity known as Vierk Corporation is no longer in business. Second, the Court has been asked to determine whether the failure of the Joint Grievance Committee to enunciate a specific award is fatal to its determination or, conversely, whether an award may be implied from the language of the decision. Finally, it has been asserted that certain variances from the grievance procedure set out in the agreement nullify the decision of the Committee. The Court will consider these issues in order.

---

1. Of the six employees of Corporation which were hired by Distributing, only two received retroactive seniority status.

## I. *The Single Employer Issue*

 In an enforcement proceeding under Section 301, the scope of review permitted the Court is severely limited. *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The Court may only review the merits of an arbitration decision to the extent that it is not rooted in interpretation of the bargaining agreement. *Id.* at 597, 80 S.Ct. at 1361. As the Court believes the issue of whether the two Vierk entities constitute a single employer to be outside of the ambit of the agreement, the merits of this issue will be considered.

It is the assertion of the defendant that Vierk Corporation and Vierk Distributing are separate and distinct employers and that, as Vierk Corporation ceased operations and did not merely terminate viable routes, Section 33 § 1(e) of the agreement, which prohibits the Company from discontinuing a route where an average of more than 1,000 cases of beer are sold per week, is inapplicable. The Court, however, disagrees with this assertion and finds that for purposes of this cause, Vierk Distributing and Vierk Corporation constitute a single employer collectively bound to the requirements of the agreement, notwithstanding that each had a separate contract with the Union.

 Where several nominally separate business entities comprise an integrated enterprise, they will collectively be considered as a single employer. *Radio and Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965). Controlling factors in such a determination include interrelation of operations, common management, centralized control of labor relations, and common ownership. 380 U.S. at 265. Other probative, yet not dispositive factors may include the similarity of the products sold and the similarity of the distribution methods. *NLRB v. C.K. Smith and Co.,* 569 F.2d 162, 164 (1977),

*cert. denied,* 436 U.S. 957, 98 S.Ct. 3070, 57 L.Ed.2d 1122 (1978).

 Vierk Corporation and Vierk Distributing are both owned by the Vierk family. Clearly, the two entities share common ownership. Additionally, the two companies share common management. Harold, Arthur, and Richard Vierk each hold offices with both corporations. While these individuals do not necessarily hold the exact same offices in each company, this fact does not preclude a finding of common management. *See, e.g. Sakrete of Northern California, Inc. v. NLRB,* 332 F.2d 902 (1964).

The two Vierk entities have a large degree of interrelatedness of operations. Aside from sharing warehouse and office facilities, the companies shared management, supervisory, and clerical personnel and employed mechanics to work on vehicles belonging to both corporations. Hence, this factor also weighs in favor of holding the two entities to be a single employer. Additionally, and most importantly, *Soule Glass and Glazing Co. v. NLRB,* 652 F.2d 1055 (1st Cir. 1981), there is present in the case at bar centralized control of labor relations. The General Manager of both distributors, Thomas Higgins, is the individual charged with all facets of labor relations for both companies.

Finally, it is probative that both companies deal in the same type of product and carry out the distribution of that product in similar manners.[2] Based on the factors as set out above, it is clear that Vierk Distributing and Vierk Corporation comprise a single employer bound by the provisions of the agreement and are precluded from terminating the routes of either entity where, as here, the sales volume has not fallen below the specified minimum.

## II. *The Sufficiency of the Award*

While upholding the grievance at the Union for the discharge of the Vierk Corporation employees, the Joint Grievance Committee failed to make an award of any sort.

---

**2.** That there are other factors which indicate some separation between the entities, such as separate bank accounts and separate account-

ing systems is not dispositive, *Sakrete,* supra, as complete integration is not required.

Indeed, the decision of the Committee merely states that, "After consideration of the facts presented, the Committee determined, by unanimous vote, to uphold the Union's grievance." It is plaintiff's argument that an award can be implied from such a determination. It is asserted by Local 744 that the award is complete and unambiguous as, in its eyes, "to uphold the grievance required reinstatement" and that the board's determination, as written, "calls for reinstatement of the employees with back pay." Defendant argues, of course, that the Committee's failure to specifically set out a remedy is fatal to the grievance.

■ The failure of the Committee to include a specific remedy in the instant case is not unexpected given the specific circumstances present. The initial grievance in this case was filed before the actual termination date. On the day of termination, the Joint Grievance Committee met and three days later, the decision was formally announced. Understandably, there was considerable confusion regarding the status of the employees and the status of the Corporation at the time these proceedings were going on. Hence, it is understandable that the Committee was unsure of what remedy it should or could apply, e.g., reinstatement, an order not to terminate, etc. Nevertheless, as it is the duty of the Committee to interpret the collective bargaining agreement and not the domain of the Court to do so, the Court cannot now imply or provide a remedy not specifically set out. Instead, the Court must remand the case to the Joint Grievance Committee to provide a remedy consistent with the contract, its decision, and this opinion.

■ It is well settled that there is a strong federal policy which favors the resolution of labor disputes by agreed-upon procedures. See, e.g. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4

L.Ed.2d 1424 (1960). Consequently, where a dispute is arguably subject to an arbitration clause, the power of the federal courts to construe such a clause is strictly circumscribed. Botica v. Floyd Steel Erectors, Inc., 485 F.Supp. 334 (N.D.Ill.1980). Hence, while it is entirely within the province of the Court to determine whether the particular dispute is subject to arbitration, under the terms of the applicable collective bargaining agreement, all doubts as to the arbitrability of a dispute are to be resolved in favor of arbitration. United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Therefore, where, as here, the determination of the Committee is ambiguous or incomplete, the cause must be remanded for clarification and amplification. Warehouse Mail Order ... Employees, Local 743 v. Carl Gorr Color Card, Inc., 512 F.Supp. 213 (N.D.Ill.1981). In Botica, supra, the Court noted that the Grievance Board had made "no particular award at all." Faced with such facts, the Court remanded the case to the grievance board for a more complete decision "susceptible to judicial enforcement." 485 F.Supp. at 343–344. Similarly, the instant case must be remanded to the Joint Grievance Committee.[3]

### III. The Procedural Issue

■ It is argued by defendant that the plaintiff's failure to strictly follow the procedures for filing a grievance as set out in the collective bargaining agreement should defeat the validity of the determination of the Joint Grievance Committee. While any variances from the contractual provisions would appear to be extremely minor and nonprejudicial at worst, it is nevertheless the domain of the Joint Grievance Committee to interpret the contract in this regard and to determine the effect of such variances. As the Court noted in Botica, supra, "The principle of nonreviewability (outlined

---

**3.** It is unnecessary for the parties to go through the entire arbitration process anew at this juncture regarding the subject of this order. Instead, the parties may bypass lengthy procedure and present the matter to the Joint Grievance Committee. Locals 2222, 2320–2327, I.B. E.W., AFL–CIO v. New England Telephone and Telegraph Co., 628 F.2d 644, 649 (1st Cir. 1980).

above) also extends to the resolution of any disputes concerning a party's compliance without procedural prerequisites imposed by the bargaining agreement with respect to arbitration," 485 F.Supp. at 339, *citing John Wiley and Sons, Inc. v. Livingston,* 376 U.S. 543, 557–558, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). It is thus not within the domain of this Court to consider this issue.

Having determined that, for purposes of the grievance filed by the terminated employees of the Vierk Corporation, Vierk Distributing and Vierk Corporation constitute a single employer, the Court remands this case to the Joint Grievance Committee to provide or further enunciate an award to accompany its determination in this matter.

IT IS SO ORDERED.