**LAMB'S PATIO THEATRE, INC.,**
**Plaintiff-Appellant,**

v.

**UNIVERSAL FILM EXCHANGES, INC.,**
**Defendant-Appellee.**

**No. 77–1971.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1978.

Decided June 26, 1978.[1]

As Amended Aug. 15, 1978.

---

1. This appeal was originally decided by unreported order on June 26, 1978. *See* Circuit Rule 35. The court has subsequently decided to issue the decision as an opinion.

H. Reed Harris, Chicago, Ill., for plaintiff-appellant.

Robert W. Bergstrom, Chicago, Ill., for defendant-appellee.

Before SWYGERT, SPRECHER and WOOD, Circuit Judges.

PER CURIAM.

Lamb's Patio Theatre brought this private antitrust action for treble damages against Universal Film Exchanges on September 3, 1974. The complaint alleged that Universal violated the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, by rejecting Lamb's bid for the movie, "The Sting," as part of a conspiracy with Plitt Theatres, the operator of the Gateway Theatre, to monopolize showing of the film on the northwest side of Chicago. On February 15, 1977 Universal moved for a summary judgment denying by affidavit the existence of a conspiracy. The district court awarded summary judgment to Universal on June 21, 1977 determining that there was a "complete absence of facts from which an inference of conspiracy [could] be drawn . . [and] that [Universal's] refusal to license [Lamb's] was the result of legitimate business considerations." *Lamb's Patio Theatre v. Universal Film Exchanges, Inc.*, 1977-1 Trade Cases ¶ 61,517 (N.D.Ill.1977).

On appeal Lamb's asserts that the district court erred in granting summary judgment because the evidence was susceptible to the factual inference that a conspiracy existed. Alternatively, Lamb's asserts that the court considered the summary judgment motion prematurely, thereby precluding Lamb's from completing discovery through which it could have marshalled additional evidence which cumulatively would have required a trial.

We affirm the district court's judgment on the basis of reasons stated hereinafter.

I

Universal, a motion picture distributor, has for many years followed the practice of licensing films to a limited number of theatres on a first run basis and then gradually increasing the number of theatres exhibiting the films on successive sub runs. Pursuant to this procedure Universal solicited bids for a second sub run, *i. e.*, the third showing of the movie, "The Sting," in the Chicago area. Lamb's received this bid request but elected not to respond. The Gateway Theatre, located in the same geographical area as Lamb's, submitted a bid stating that it would not book any movie after "The Sting" so that it could continue the run for the entire summer if terms for additional sub run holdovers could be mutually agreed upon. Universal accepted Gateway's bid and licensed it for a six-week engagement beginning June 28, 1974.

On July 10 Universal solicited bids for a third sub run of "The Sting" to begin August 16. The solicitation included Universal's standard clause whereby it "reserve[d] the right to reject all bids and to license the picture by negotiation." Lamb's submitted a bid for this sub run which Universal rejected. Universal instead chose to allow the Gateway to continue running "The Sting" even though the Gateway had not submitted a bid. Lamb's asserts that once Universal solicited competitive bids it was obligated to conduct the bidding in good faith, and that when it rejected Lamb's bid and licensed the Gateway under allegedly less favorable holdover terms, it did so in bad faith. Lamb's argues that this allegation of bad faith combined with its allegation that Universal's other business reasons for rejecting Lamb's bid were both inaccurate and inconsistent with its prior course of dealings with other exhibitors could lead to the reasonable inference that a conspir-

acy existed between Universal and the operator of the Gateway.

■ We cannot agree with Lamb's reasoning. It is well established that a person operating a private business has the right to select his own customers and when exercising unilateral business discretion, may refuse to sell to a particular customer. *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919); *Bell v. Speed Queen*, 407 F.2d 1022, 1027 (7th Cir. 1969). This principle has been applied specifically to the motion picture industry.

> [A] distributor has the right to license or refuse to license his film to any exhibitor, pursuant to his own reasoning, so long as he acts independently. . . . [A]ny illegality consists not in the refusal of any one distributor to license an exhibitor, but in his conspiring with one or more other persons to refuse such license.

*Paramount Film Distributing Corp. v. Applebaum*, 217 F.2d 101, 124 (5th Cir. 1954), *cert. denied*, 349 U.S. 961, 75 S.Ct. 892, 99 L.Ed. 1284 (1955). *See also Dahl, Inc. v. Roy Cooper Co.*, 448 F.2d 17, 19 (9th Cir. 1971).

■ It is not enough, therefore, that Lamb's allege an inconsistency in Universal's course of dealings or that its business reasons for rejecting Lamb's bid were inaccurate. Absent a showing of conspiracy by Lamb's, Universal had no obligation to produce any reasons for refusing to deal with Lamb's. Thus even if Lamb's could show that Universal's announced business reasons were not legitimate, such showing would not satisfy Lamb's burden of establishing the existence of the conspiracy element essential to its prima facie antitrust case.[2]

■ Lamb's is left therefore with its bald allegation of conspiracy to refute the sworn affidavit denying a conspiracy. Lamb's argues, that even so, summary judgment is an inappropriate vehicle to determine the issues of motive and intent upon which conspiracy is founded, as these issues hinge exclusively on credibility judgments. The lack of any credible evidence, however, that a monopolistic conspiracy or agreement existed created a "fatal hiatus" in light of which "the intent, motive, or state of mind of the [defendant is] irrelevant." *Solomon v. Houston Corrugated Box Co., Inc.*, 526 F.2d 389, 395 (5th Cir. 1976). Facing the sworn denial of the existence of conspiracy, it was up to plaintiff to produce significant probative evidence by affidavit or deposition that conspiracy existed if summary judgment was to be avoided. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). In the two and one-half years since commencing this action Lamb's has not been able to produce such evidence. Absent a conspiracy, Universal could have rejected Lamb's bid for any reason or for no reason at all. All that can reasonably be inferred from the evidence presented by Lamb's is that Universal exercised its option unilaterally to reject bids and negotiate with the Gateway for holdover terms. We agree with the district court that no factual issue remained in dispute and that the evidence taken in a light most favorable to Lamb's did not reveal an antitrust violation. Under these circumstances summary judgment for Universal was appropriate.

## II

Lamb's also contends that under Rule 56(f) of the Federal Rules of Civil Proce-

---

**2.** Lamb's argues that Universal's alleged display of bad faith in licensing the Gateway under less favorable holdover terms than those offered by its competitive bid could lead to a reasonable inference that such licensing was the product of a conspiracy. While the record casts doubt on whether Lamb's bid was in fact higher than the holdover terms agreed upon with the larger Gateway Theatre, assuming arguendo that this were the case, Universal's

licensing the Gateway under such terms could not be sufficient to support the inference urged by Lamb's. As the First Circuit said in *Brown v. Western Massachusetts Theatres, Inc.*, 288 F.2d 302, 304 (1st Cir. 1961) (footnote omitted):

> [A] departure from competitive bidding does not in itself constitute or prove a[n anti-trust] violation, and cannot be helpful to the plaintiff unless he can rationally relate it to other conduct by the alleged conspirators.

dure, summary judgment should not have been entered because it prevented Lamb's from pursuing additional discovery. We find this contention to be devoid of all merit.

Rule 56(f) authorizes a court to refuse to enter summary judgment when the party opposing the motion can establish by affidavit "that he cannot for reasons stated present by affidavit facts essential to justify his opposition." But as the Eighth Circuit recently observed:

> Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious. A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits . . . and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

*Willmar Poultry Co. v. Morton-Norwich Products, Inc.*, 520 F.2d 289, 297 (8th Cir. 1975), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976).

The only reason why Lamb's sought additional time for discovery was to refute the validity of Universal's business reasons for rejecting Lamb's bid. But as we held above, Universal's business reasons are irrelevant in this case. We agree with the district court that Lamb's affidavit, which merely repeated an attack on such reasons, did not present a genuine and convincing need for further discovery.

An allowance of further discovery would be particularly inappropriate here as plaintiff displayed a cavalier attitude throughout this case by failing to make reasonable efforts to complete its discovery despite the fact that the district court repeatedly granted its requests for discovery extensions throughout a two and one-half year period. Such dilatory tactics should not be rewarded with more opportunity possibly to net pertinent evidence by extending such a leisurely undertaken fishing expedition.

*See Abiodun v. Martin Oil Service, Inc.*, 475 F.2d 142 (7th Cir.) (*per curiam*), *cert. denied*, 414 U.S. 866, 94 S.Ct. 57, 38 L.Ed.2d 86 (1973); *Lavine v. Shapiro*, 257 F.2d 14 (7th Cir. 1958).

The judgment of the district court is affirmed.