726 F.2d 1222
 16 Ed. Law Rep. 26
 William E. KORF, Plaintiff-Appellant,
v.
BALL STATE UNIVERSITY; Board of Trustees, of Ball State
University; Robert P. Bell, individually and in his
capacity as President of Ball State University; Will
Parker, individually and in his capacity as President of the
Board of Trustees of Ball State University; Frank A.
Bracken, individually and in his capacity as Vice-President
of the Board of Trustees of Ball State University; James P.
Garretson, individually and in his capacity as Secretary of
the Board of Trustees of Ball State University; Dorothy S.
O'Maley, individually as in her capacity as Assistant
Secretary of the Board of Trustees of Ball State University;
James W. Parks, individually and in his capacity as a
member of the Board of Trustees of Ball State University;
Jack Peckinpaugh, individually and in his capacity as a
member of the Board of Trustees of Ball State University;
T. Edwin Schouweiler, individually and in his capacity as a
member of the Board of Trustees of Ball State University;
Christy A. Swing, individually and in her capacity as a
member of the Board of Trustees of Ball State University,
Defendants-Appellees.
 No. 83-1625.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 18, 1983.
Decided Feb. 8, 1984.
As Amended Feb. 15, 1984.
 
 Richard J. Swanson, Segal & Macey, Indianapolis, Ind., for plaintiff-appellant.
 Jon H. Moll, DeFur, Voran, Hanley, Radcliff & Reed, Muncie, Ind., for defendants-appellees.
 Before BAUER and COFFEY, Circuit Judges, and DUMBAULD, Senior District Judge.*
 COFFEY, Circuit Judge.
 
 
 1
 Dr. William E. Korf appeals the district court's decision granting summary judgment to the defendants in an action brought by Dr. Korf following his termination as a tenured Associate Professor of Music History and Musicology at Ball State University, Muncie, Indiana. On appeal Dr. Korf argues that the entry of summary judgment was an improper denial of his due process and equal protection claims, and his challenge to the defendants' qualified immunity. Dr. Korf also argues that the district court abused its discretion in denying him the opportunity to conduct further discovery and in holding that the Eleventh Amendment provides defendants with immunity from prospective and injunctive relief. We AFFIRM.
 
 I.
 
 2
 In February, 1981, Dr. Korf was informed by Lloyd Nelson, Dean of Ball State's College of Fine and Applied Arts, that certain of his current and former male students had accused him of sexual harassment. The students alleged that the harassment consisted of Dr. Korf's making unwelcomed sexual advances towards them and offering good grades contingent upon sexual involvement. Dean Nelson informed Dr. Korf that he intended to commence termination proceedings against him, and provided him the opportunity to resign. Dr. Korf denied the accusations and refused to resign. In accordance with established procedures, a committee was formed to investigate the charges. On April 2, 1981, the committee concluded that sufficient grounds existed to institute formal termination proceedings against Dr. Korf.
 
 
 3
 The president of Ball State, Dr. Robert P. Bell, reviewed the committee's recommendation and informed Dr. Korf of the committee's findings. Based on those findings, on April 24, 1981, Dr. Bell told Dr. Korf that formal termination proceedings were being commenced and that he had the right to a hearing before an ad hoc hearing committee, drawn from the University Senate Judicial Committee, to determine whether or not Dr. Korf should be removed from his position. Dr. Korf requested a hearing and the University complied with his request on May 20, 1981.
 
 
 4
 At that hearing, a student related the relationship he had had with Dr. Korf and testified that Dr. Korf gave him money and gifts in exchange for sexual acts.[1] In addition, the student alleged that he was promised good grades. While denying that grades were involved, Dr. Korf admitted his sexual involvement with this student. The committee also heard testimony from three individuals and had statements of four other individuals who recounted Dr. Korf's sexual advances towards them while or after they were his students.
 
 
 5
 On May 21, 1981, the committee made the following findings:
 
 
 6
 "Based on the evidence provided at the hearing on May 20, 1981, we find Dr. William E. Korf guilty of unethical conduct because he used his position and influence as a teacher to exploit students for his private advantage. The evidence indicates a pattern of behavior in which he frequently built a personal, friendly relationship, followed by sexual advances, often in his home.
 
 
 7
 "This pattern was evidenced by the testimony of six (6) witnesses who were either present or submitted signed statements ... and by two (2) individuals who made statements to the Affirmative Action Officer .... These eight (8) people are current or former students in one or more of Dr. Korf's classes.
 
 
 8
 "We find insufficient evidence to support the allegation that Dr. Korf encouraged dishonest academic conduct."
 
 
 9
 The committee based its finding that Dr. Korf engaged in unethical conduct on paragraph 2 of the American Association of University Professors ("AAUP") Statement on Professional Ethics which was adopted by Ball State University in 1967 and published in its Faculty Handbook.[2] Even though the committee found Dr. Korf guilty of unethical conduct, they recommended only that Dr. Korf be placed on a three-year period of probation, rather than discharged, because they did not feel that he had been provided "ample warning and opportunity for behavioral change."
 
 
 10
 Pursuant to established procedures, the Board of Trustees was presented with the hearing committee's report. After hearing arguments from University representatives and counsel for Dr. Korf on July 6, 1981, the Trustees agreed with the committee's finding of unethical conduct but refused to accept the committee's disciplinary recommendation of three years probation and directed that the committee's report and recommendations be returned to them for reconsideration. Upon reconsideration, the hearing committee, after a "close re-examination of the statement of ethics in the Faculty Handbook " and because of the realistic unenforceability of some of the proposed conditions of probation,[3] reversed its prior recommendation of probation and recommended that Dr. Korf be discharged from the University. Based upon this recommendation the Trustees terminated Dr. Korf's employment on July 24, 1981.
 
 
 11
 Dr. Korf initiated this action under 42 U.S.C. Sec. 1983 on May 21, 1982, seeking both legal and equitable relief. The six-count complaint alleged violations of Dr. Korf's constitutional rights to substantive and procedural due process, equal protection, free speech, freedom of association, and privacy, along with state law claims for breach of his employment contract and infliction of emotional distress. The defendants filed a motion to dismiss alleging that: (1) they possessed immunity both under the Eleventh Amendment and the doctrine of qualified immunity; (2) none of Dr. Korf's constitutional rights were violated; and (3) Dr. Korf's employment contract was not breached and his emotional distress claim was insufficient. The motion was accompanied by an affidavit from the President of the Ball State University Board of Trustees delineating the basis for Dr. Korf's termination. Attached to the affidavit was the transcript of the formal hearing and all the exhibits presented. On August 5, 1982, Dr. Korf moved for a continuance to allow him to respond to the defendants' motion to dismiss until after discovery. Alternatively, he moved for an enlargement of time to respond to the defendants' motion. The court granted his alternative motion.
 
 
 12
 On March 11, 1983 the district court granted defendants summary judgment[4] on Dr. Korf's constitutional and state law claims.[5] The court concluded that Ball State University was an instrumentality of the State of Indiana for the purposes of the Eleventh Amendment and therefore the University, its Board of Trustees and the individual defendants in their official capacities were immune from suit under Sec. 1983. Because the affidavits presented on Dr. Korf's behalf failed to provide any evidence sufficient to create a genuine question whether the individual defendants acted in bad faith, the court also ruled that the defendants were immune from Sec. 1983 liability under the doctrine of qualified or "good faith" immunity.
 
 
 13
 The main question we must decide is whether or not the district court committed error in granting the defendants' motion for summary judgment. Dr. Korf contends that since there were disputed issues of material fact concerning his substantive due process and equal protection claims, summary judgment was improper. Dr. Korf also argues that even if he has not created genuine issues of material fact regarding these constitutional claims, the trial court erred by failing to grant him sufficient time to conduct the necessary discovery to prove that the University's regulations were applied against him arbitrarily.
 
 II.
 
 14
 Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." It is clear that the party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. Egger v. Phillips, 710 F.2d 292, 296 (7th Cir.1983); Rose v. Bridgeport Brass Co., 487 F.2d 804 (7th Cir.1973). "For the purpose of determining whether any material fact remains disputed 'the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " Fitzsimmons v. Best, 528 F.2d 692, 694 (7th Cir.1976) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). These inferences must, however, be reasonably drawn. Posey v. Skyline Corp., 702 F.2d 102, 104 (7th Cir.1983).
 
 
 15
 "To create a question of fact, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial.... A party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue."
 
 
 16
 Id. at 105 (citations omitted). The existence of a factual dispute does not necessarily preclude summary judgment unless "the disputed fact is outcome determinative under the governing law." Egger v. Phillips, 710 F.2d at 296. "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." Admiralty Fund v. Hugh Johnson & Co., 677 F.2d 1301, 1306 (9th Cir.1982). It is against this procedural background regarding the propriety of summary judgment that we must examine Dr. Korf's claims concerning the existence of material issues of fact relevant to his constitutional claims.
 
 III.
 A. SUBSTANTIVE DUE PROCESS
 
 17
 Dr. Korf argues that the record contains issues of material fact as to "whether he could have had adequate notice" of Ball State's "asserted prohibition of consensual sexual relations between faculty members and students." Dr. Korf does not contend he was unaware of the University's proscription of unethical faculty conduct; rather, he argues that the AAUP Statement on Professional Ethics could not be reasonably interpreted to include what he labels "consensual sexual relationships" with students but which the Hearing Committee expressly found to be "unethical behavior of exploiting students for his private advantage."
 
 
 18
 In support of his opposition to defendants' summary judgment motion, Dr. Korf failed to allege any specific facts which would tend to create a genuine issue challenging the reasonableness of the interpretation given to the AAUP Statement of Professional Ethics, paragraph 2, by his faculty peers on the Hearing Committee. While Dr. Korf argues that he was not "adequately put on notice" because he was the first Ball State University faculty member ever disciplined for conduct such as his or, for that matter, any unethical conduct, the only logical basis for this argument is that if another professor had previously been dismissed for conduct similar to his, Dr. Korf would have definitely known that his conduct would warrant discipline. The plaintiff-appellant has failed to cite any caselaw setting forth a constitutional requirement that such notice be provided to would-be offenders. Common sense, reason and good judgment should have made him cognizant of the fact that his conduct could and would be cause for termination. One cannot be heard to complain that it is somehow unfair to be the first one disciplined under a particular law, rule or regulation since if that were the case, no new law, rule or regulation could ever be enforced.
 
 
 19
 Dr. Korf also alleges that other "private and consensual" faculty/student sexual relationships had occurred and were presently occurring at Ball State University and that no steps had ever been taken against the faculty members allegedly involved. This argument also misses the mark. First, despite Dr. Korf's repeated characterization of his conduct as "private and consensual," the faculty Hearing Committee found that he engaged in unethical behavior by "exploiting students for his private advantage." Therefore, "consensual" sexual activity is not at issue as it does not concern a fact which is "outcome determinative under the governing law." Egger v. Phillips, 710 F.2d at 296. In any event, while there is no evidence that the young student Dr. Korf admitted having a sexual relationship with did not consent to engage in sexual activity with him, Dr. Korf's conduct is not to be viewed in the same context as would conduct of an ordinary "person on the street." Rather, it must be judged in the context of the relationship existing between a professor and his students within an academic environment. University professors occupy an important place in our society and have concommitant ethical obligations. The AAUP Statement on Professional Ethics makes this clear:
 
 
 20
 "1.) The professor, guided by a deep conviction of the worth and dignity of the advancement of knowledge, recognizes the special responsibilities placed upon him....
 
 
 21
 "2.) ... He demonstrates respect for the student as an individual and adheres to his proper role as intellectual guide and counselor...."
 
 
 22
 Ball State University Faculty Handbook at II-7. Furthermore, the Committee heard evidence of Dr. Korf's sexual advances towards seven students who refused his advances. One student recounted how he had to be "very assertive to get away from Dr. Korf's amorous advances." Such conduct certainly cannot be characterized as consensual sexual activity. Second, even if such alleged relationships between other faculty and students were relevant, all Dr. Korf has done is make bare assertions of faculty-student sexual relationships without any detailed information, much less supporting affidavits or proof. He must set forth specific facts in order to create a genuine issue of fact. Posey v. Skyline Corp., 702 F.2d at 105.
 
 
 23
 Dr. Korf further argues that it is significant that the AAUP Statement on Professional Ethics relied upon by the Board of Trustees as the basis for his termination does not make any reference to sexual conduct. While his observation that the statement does not specifically mention sexual conduct is correct,[6] his conclusion regarding the omission's significance is misplaced and is contrary to reason and common sense. As is the case with other laws, codes and regulations governing conduct, it is unreasonable to assume that the drafters of the Statement on Professional Ethics could and must specifically delineate each and every type of conduct (including deviant conduct) constituting a violation. Nor have we been cited any case reciting that the language of the Constitution requires such precision.
 
 
 24
 "[I]t is not feasible or necessary ... to spell out in detail all that conduct which will result in retaliation. The most conscientious of codes that define prohibited conduct of employees include 'catchall' clauses prohibiting employee 'misconduct,' 'immorality,' or 'conduct unbecoming.' "
 
 
 25
 Meehan v. Macy, 392 F.2d 822, 835 (D.C.Cir.1968); modified, 425 F.2d 469 (D.C.Cir.1969); aff'd en banc, 425 F.2d 472 (D.C.Cir.1969). See also Arnett v. Kennedy, 416 U.S. 134, 158-162, 94 S.Ct. 1633, 1646-1648, 40 L.Ed.2d 15 (1974) (statute authorizing removal or suspension of federal employees "for such cause as will promote the efficiency of the service" is not vague or overbroad). The lack of specific reference to sexual conduct in the Statement on Professional Ethics does not bar its application to Dr. Korf's conduct.
 
 
 26
 The Hearing Committee and the Board of Trustees relied upon that portion of the AAUP Statement warning against "any exploitation of students for ... private advantage" in reaching their decision to terminate Dr. Korf. Dr. Korf argues that this portion of the statement only prohibits the use of student research or assistance in an improper manner because this portion of the statement ends by stating "and acknowledges significant academic assistance from them." Construing "exploitation of students for ... private advantage" to include Dr. Korf's conduct was entirely reasonable. The narrow construction Dr. Korf asks us to accept is contrary to the express language of the provision as it proscribes "any exploitation of students" rather than merely "academic exploitation of students." We agree with his academic peers on the Hearing Committee and the Board of Trustees in their application of this provision of the AAUP Statement of Professional Ethics to Dr. Korf's conduct. They were well-qualified to interpret the AAUP Statement of Professional Ethics as well as to determine what is and is not acceptable faculty conduct within an academic setting. Furthermore, while the Hearing Committee based their initial recommendation on the particular portion of the AAUP Statement barring "exploitation of students ... for private advantage," they explained that they changed their recommendation after they undertook a "close re-examination of the Statement of Ethics in the Faculty Handbook." The pertinent paragraph of the AAUP Statement of Professional Ethics also states that a professor "demonstrates respect for the student as an individual and adheres to his proper role as intellectual guide and counselor." It is patently clear that Dr. Korf's conduct was also inconsistent with this provision of the AAUP Statement.
 
 
 27
 In sum, Dr. Korf's arguments merely consist of generalized allegations disparaging the reasonableness of the interpretation given to the AAUP Statement by the Hearing Committee and the Board of Trustees. Our examination of the record reveals no "genuine issue of material fact" precluding disposition of his substantive due process claim by summary judgment. When the record is viewed in the light most favorable to Dr. Korf, his bald allegations do not meet that standard of proof necessary to create a genuine issue of material fact as to whether he "had adequate notice of the standard of conduct to which he was being held." The facts and circumstances clearly demonstrate that he should have understood both the standards to which he was being held and the consequences of his conduct. Dr. Korf merely asserts that he was not afforded notice and thereby contends that an issue of fact exists. This assertion alone is "insufficient to raise a factual issue." Posey v. Skyline Corp., 702 F.2d at 105. Because of Dr. Korf's failure to allege any specific facts in support of his alleged lack of notice his substantive due process claim was ripe for summary judgment since "there [was] no genuine issue as to any material fact ...." Fed.R.Civ.P. 56(c).
 
 
 28
 We also agree with the conclusions of law reached by the district court regarding the substantive due process issue and the court's express finding that "it cannot be seriously maintained that Dr. Korf's conduct was not clearly proscribed by University Regulations."
 
 
 29
 "The claim that a person is entitled to 'substantive due process' means, as we understand the concept, that state action which deprives him of life, liberty, or property must have a rational basis--that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as 'arbitrary.' "
 
 
 30
 Jeffries v. Turkey Run Consolidated School District, 492 F.2d 1, 3-4 (7th Cir.1974). We have no difficulty whatsoever concluding that Dr. Korf's termination was not "arbitrary" since the reasons for his termination were adequate. The University's interpretation of the AAUP Statement was entirely reasonable and rationally related to the duty of the University to provide a proper academic environment.
 
 
 31
 "[A] University has a right, and indeed a duty, to take all reasonable and lawful measures to prevent activities which adversely intrude into the teaching process or which might adversely affect the University's image and reputation. It has a right to expect and demand the highest standards of personal behavior and teaching performance from its teachers and professors. It does not have to settle for less."
 
 
 32
 Naragon v. Wharton, 572 F.Supp. 1117, 1121 (M.D.La.1983). (A university did not violate the constitutional rights of a graduate assistant when it changed her assignment from teaching to research after discovering that she had had a homosexual relationship with a student who was not in her classes.) We hold that the district court properly granted summary judgment to the defendants on Dr. Korf's substantive due process claim.
 
 B. EQUAL PROTECTION
 
 33
 Dr. Korf's allegations contending that disputed issues of material fact exist which should have precluded summary judgment on his equal protection claim suffer the same infirmities as his allegations regarding his substantive due process claim. Simply put, his allegations when viewed in a light most favorable to him, do not create a genuine issue of material fact as to whether the University selectively enforced its regulations against him. Dr. Korf again incorrectly premises his arguments on involvement in "consensual sexual relations" and merely alleges selective enforcement without providing us with any specific facts to support that claim.
 
 
 34
 We do not agree with Dr. Korf's argument that he was terminated for his untraditional sexual preferences, since he was in fact terminated for his unethical conduct in violation of the AAUP Statement of Professional Ethics as a result of sexual advances toward his students. The record fails to even suggest that the University would hesitate to discharge a professor who acted in a manner similar to Dr. Korf but directed his or her advances towards students of the opposite sex rather than the same sex. Since Dr. Korf,
 
 
 35
 "neither asserted nor established the existence of any suspect classification or the deprivation of any fundamental constitutional right ... the only inquiry is whether the State's [action] is 'rationally related to the State's objective.' "
 
 
 36
 Harrah Independent School Dist. v. Martin, 440 U.S. 194, 199, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1979) (citation omitted, quoting Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 315, 96 S.Ct. 2562, 2568, 49 L.Ed.2d 520 (1976)). Clearly, Ball State University's action in this instance was rationally related to its responsibility to establish and maintain high ethical standards within the University in order to maintain a proper academic environment. In this case we do not see any evidence of the "intentional invidious discrimination by the state against persons similarly situated" which the Equal Protection Clause exists to protect. Ciechon v. City of Chicago, 686 F.2d 511, 522-23 (7th Cir.1982). We hold that Dr. Korf's equal protection claim has no legal or factual basis and that the district court properly granted summary judgment to defendants on this claim.
 
 IV.
 
 37
 Finally, Dr. Korf maintains that even if he did not present sufficient evidence to create a genuine issue of material fact with regard to his equal protection claim, the district court abused its discretion in denying his Federal Rule of Civil Procedure 56(f) motion for further discovery before responding to the University's motion for summary judgment.[7] Rule 56(f) of the Federal Rules of Civil Procedure envisions a situation such as this where summary judgment is sought prior to the initiation of discovery.[8]
 
 
 38
 "Subsection (f) allows a party who 'has no specific material contradicting his adversary's presentation to survive a summary judgment motion if he presents valid reasons justifying his failure of proof.' "
 
 
 39
 Wallace v. Brownell Pontiac-GMC Co., Inc., 703 F.2d 525, 527 (11th Cir.1983) (quoting 10-A Wright, Miller, & Kane, Federal Practice and Procedure Sec. 2740 at 530 (2d ed. 1983)).
 
 
 40
 In Lamb's Patio Theatre v. Universal Film Exchanges, 582 F.2d 1068 (7th Cir.1978), our court quoted with approval the Eighth Circuit's reasoning on the showing required for a party to succeed in a Rule 56(f) motion:
 
 
 41
 "Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious. A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits ... and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."
 
 
 42
 Id. at 1071 (emphasis added) (quoting Willmar Poultry Co. v. Morton-Norwich Products, Inc., 520 F.2d 289, 297 (8th Cir.1975), cert. denied, 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976)). See also S.E.C. v. Spence & Green Chemical Co., 612 F.2d 896 (5th Cir.1980), cert. denied, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981); Wallace v. Brownell Pontiac-GMC Co., Inc., 703 F.2d at 527; Federal Practice and Procedure Sec. 2740 at 530.
 
 
 43
 In his affidavit to the district court, Dr. Korf alleged that due to his lack of time to conduct discovery he was unable to set forth any specific facts to demonstrate that genuine issues for trial existed. He sought to commence discovery concerning:
 
 
 44
 (1) "[R]elevant University policy and practice with respect to the proper scope of University inquiry into the private sexual relationships of faculty members.
 
 
 45
 (2) "[W]hether the University has singled out plaintiff, charged with engaging in private and consensual homosexual relationships with University students, for harsher treatment than faculty members who have engaged in heterosexual relationships with University students."
 
 
 46
 These foregoing reasons for which Dr. Korf sought discovery are insufficient to warrant the provision of additional time to conduct discovery before responding to the University's summary judgment motion. If his allegations were true he certainly had ample time to allege sufficient specific facts and/or conduct. He failed to provide an adequate explanation to the court as to "why he [could not] respond to [the University's] affidavits ...." Lamb's Patio Theatre v. Universal Film Exchanges, 582 F.2d at 1071. Furthermore, both of the reasons he sets forth in seeking discovery related to "private sexual relationships." Since the discharge of Dr. Korf was not predicated upon his engaging in "private sexual relationships," but unethical conduct by exploiting students for his private advantage, such discovery is completely irrelevant to his equal protection claim and would amount to no more than a fishing expedition. The information sought by Dr. Korf would be of no value to him in rebutting the strong showing made by Ball State University that Dr. Korf was properly terminated from his tenured professor position at the University. The Supreme Court has recently reiterated that unnecessary, broad-ranging discovery is disruptive and that as a consequence insubstantial claims should be resolved by summary judgment. Harlow v. Fitzgerald, 457 U.S. 800, 817-18, 102 S.Ct. 2727, 2738-39, 73 L.Ed.2d 396 (1982). This language clearly applies to this appeal and we hold that the district court did not abuse its discretion when it denied Dr. Korf's motion to conduct additional discovery.
 
 
 47
 The decision of the district court is AFFIRMED.[9]
 
 
 
 *
 The Honorable Edward Dumbauld, Senior District Judge of the United States District Court for the Western District of Pennsylvania, is sitting by designation
 
 
 [1]
 The relationship began while this student was a seventeen-year-old freshman at the University
 
 
 [2]
 The statement reads in pertinent part that:
 "2. As a teacher, the professor encourages the free pursuit of learning in his students. He holds before them the best scholarly standards of his discipline. He demonstrates respect for the student as an individual and adheres to his proper role as intellectual guide and counselor. He makes every reasonable effort to foster honest academic conduct and to assure that his evaluation of his students reflects their true merits. He respects the confidential nature of the relationship between professor and student. He avoids any exploitation of students for his private advantage and acknowledges significant assistance from them. He protects their academic freedom."
 Ball State University Faculty Handbook at II-7 (Emphasis added).
 
 
 [3]
 The terms of the recommended probation were:
 "1. He will not invite students to his home.
 "2. He will not have students living in his home.
 "3. He will hold no private meetings with any student without leaving his office, classroom or studio door open.
 "4. He will be excluded from consideration for promotion.
 "5. He will be ineligible for merit pay consideration.
 "6. He will periodically be reviewed by appropriate administrators."
 
 
 [4]
 While treating that portion of the defendants' motion to dismiss because of immunity as a motion to dismiss, the court treated that portion of their motion relating to plaintiff's state law and constitutional claims as one for summary judgment since defendants' contentions were supported by documents outside the pleadings
 
 
 [5]
 The parties had previously stipulated to the dismissal of one of the plaintiff's due process claims and plaintiff's emotional distress claim on December 13, 1982
 
 
 [6]
 The pertinent portion of the statement is reprinted in note 2, supra
 
 
 [7]
 As we have previously stated, the district court granted Dr. Korf's alternative motion for a continuance of time to respond. The plaintiff actually did commence discovery on December 17, 1982. However, the defendants moved to stay discovery on January 1, 1983. The court never formally acted upon the motion to stay discovery but granted it sub silentio when granting defendants' summary judgment motion on March 11, 1983
 
 
 [8]
 Subsection (f) provides that:
 "When affidavits are unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reason stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."
 
 
 [9]
 Since we find no substance in Dr. Korf's constitutional claims against the defendants, we find it unnecessary to address his challenge to the district court's rulings concerning defendant's immunity