CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT), Plaintiff, Counter-Defendant,

v.

DENTON CARTAGE CO., Defendant, Counter-Plaintiff.

No. 85 C 1303.

United States District Court, N.D. Illinois, E.D.

Feb. 3, 1986.

Marvin Gittler/Donald Cohen, Asher, Pavalon, Gittler & Greenfield, Chicago, Ill., for plaintiff, counter-defendant.

Elaine S. Fox/Kevin E. Snapp, Gottlieb & Schwartz, Chicago, Ill., for defendant, counter-plaintiff.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) ("the Union") filed this suit under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982),[1] to enforce the order of a Joint Grievance Committee reinstating with back pay a union member discharged by defendant Denton Cartage Co. ("Denton"). The Union now seeks summary judgment to enforce the order, to include an award of interest since the time of that order and to bar the admission of the deposition of a grievance committee member. Denton has filed a counterclaim seeking relief from the grievance committee's action and also has moved for summary judgment to vacate the grievance

1. That provision states in pertinent part:

 (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

committee's award and to compel arbitration of the underlying dispute. For the following reasons, the plaintiff's motion for summary judgment is denied, and the defendant's motion for summary judgment is granted in part and denied in part.

A motion for summary judgment can be granted only if the moving party shows that no genuine issue of material fact exists, thus entitling that party to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984).

Though the parties disagree about the exact nature of the events which led to this suit, the following facts do not appear to be in dispute. On October 3, 1984, Denton fired James Poulos ("Poulos"), a truck driver covered under the collective bargaining agreement then existing between the parties. As was his right under Article 18 of the collective bargaining agreement, Poulos filed a grievance against Denton seeking his reinstatement with back pay. In accordance with the grievance procedure set forth in the agreement, representatives of both the Union and Denton first met to discuss Poulos' grievance on October 31, 1984, although they were unsuccessful in reaching a mutually desirable settlement. Poulos then proceeded to the Permanent Joint Grievance Committee ("the Committee"), a body made up of three Union representatives and three company representatives. A hearing before the Committee was scheduled for December 14, 1984, at 11:15 a.m. On that date, both parties were present in the Union hall where the Committee was holding its session. Denton's attorney Kurt Meyer, along with Denton's vice-president and witnesses arrived at the Union hall at about 11:00 a.m. and were greeted by Michael Campbell, a union official. When Meyer asked Campbell if there were any published rules governing the Committee hearings, Campbell responded that there were none. Furthermore, no rules regarding these hearings are set

forth in the collective bargaining agreement.[2]

At approximately 11:45 a.m., Campbell informed the Denton representatives that the Committee was running late and suggested that they go to lunch and return at 1:00 p.m. The Denton representatives followed Campbell's suggestion, but when they returned at 1:00 p.m., they were told there would be further delay. At about 1:30 p.m., Meyer and Denton's vice-president informed a union official that if the grievance could not be heard before 2:00 p.m., they would have to leave because Meyer had another appointment scheduled. Shortly after 2:00 p.m., Meyer told a receptionist with whom he left his business card that he could not wait any longer and requested that a Union representative call him to reschedule the hearing.

About half an hour after Denton's representatives left the Union hall, the Poulos grievance was finally called. Union hearing representative Paul Glover stated to the Committee that "the Denton Cartage representatives informed the Union switchboard operator that they felt they had waited long enough. They left approximately 2:10 a.m. [sic]. And said that they would not participate in the proceeding." December 14, 1984 Hearing Transcript at 2. Shortly thereafter, the Committee entered a "default" against Denton for non-appearance after due and adequate notice.

On December 17, the next business day following the hearing, Meyer sent a certified letter to the Union's executive director with copies to the Committee members stating that the company's representatives had been present at the time and place designated for the grievance hearing, and that they were ready and willing to proceed in good faith with the grievance procedure at that time. Meyer also requested a new hearing date. By letter dated December 18, Glover informed Denton that the Committee had decided that Poulos should be reinstated. Meyer immediately requested

---

**2.** Article 18 of the collective bargaining agreement provides that "[t]he Permanent Joint Grievance Committee shall adopt such rules of

procedure as it deems necessary ..." although apparently no such rules were adopted.

reconsideration of the default, and the Committee scheduled a hearing on that request for February 1, 1985. At that time, the Union strongly opposed a reconsideration of the December 14, 1984 default decision while Meyer attempted to explain the reasons for Denton's absence. The Committee divided evenly on the decision of whether to reconsider the December 14 order, and Denton's motion was thereby denied since it lacked a majority vote by the Committee.

■ The scope of review of labor arbitration awards by federal courts under § 301 is extremely limited. The idea of disturbing decisions made under a dispute resolution regime specifically provided for by contractual agreement is repugnant to the notion of "industrial self-governance" which federal labor policy encourages. *See United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ("the *Steelworkers Trilogy*"). In the course of promoting industrial peace, the policy of limited review also allows labor disputes to be resolved under a system unencumbered by the complexities and expense of the federal judicial process. Thus, arbitration awards are to be left undisturbed so long as they "draw their essence" from the underlying collective bargaining agreement. *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

Nevertheless, more vigorous review of labor arbitration decisions is occasionally necessary in order to avoid decisions which are in violation of an important public policy. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). Furthermore, if a decision cannot be said to draw its essence from the collective bargaining agreement, a court may undertake a stricter review

since to do so would not undermine the arbitration process or any of the goals which it furthers.

In the present case, although a default was declared by the grievance committee, there was no procedure for doing so prescribed in the collective bargaining agreement. In fact, the adoption of procedural rules as necessary is authorized by the agreement, though the Committee chose not to do so. As such, we do not find that the Committee's default decision drew its "essence" from the collective bargaining agreement.

We recognize those cases which limit judicial review of arbitration decisions even on procedural grounds, *see, e.g., John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers, et al., Local Union No. 744 v. Metropolitan Distributors, Inc.*, 763 F.2d 300 (7th Cir.1985), however, we find them distinguishable. These cases held that questions of procedural arbitrability should be left to the arbitrator once a court has decided the parties are obligated to arbitrate the dispute. *John Wiley & Sons*, 376 U.S. at 557, 84 S.Ct. at 918; *Metropolitan Distributors*, 763 F.2d at 302–03. However, the procedural disputes in both of these cases clearly involved questions of compliance with grievance procedures specifically set forth in the respective collective bargaining agreements. In this case, neither the entry of default nor the procedural rules for doing so were codified in any place. Although Denton had notice of the grievance committee hearing, it had no rules to refer to regarding default judgments.

Furthermore, the Court in *John Wiley & Sons* was particularly concerned with the exercise of judicial review power over questions of procedural arbitrability where they were intertwined with substantive issues not subject to such review. *John Wiley & Sons*, 376 U.S. at 557, 84 S.Ct. at 918. Here, however, the procedural question can be examined without affecting or implicating the merits of the arbitrable dispute and without delving into the area of contract interpretation. We therefore find that the

decision of the grievance committee is reviewable on this narrow procedural ground.

██ In this case, we find that the decision to enter a default against Denton and to deny reconsideration of that decision violates the fundamental public policy of ensuring due process in legal disputes, whether they be in the federal courts or in alternative systems of dispute resolution. While arbitration proceedings need not emulate the judicial process, basic notions of fairness must be respected in order to facilitate the orderly and peaceful resolution of labor-management disputes. Moreover, it is the failure to review a proceeding such as this one, rather than its disturbance, which would undermine federal labor policy. If there is no guarantee of basic fairness in the dispute resolution procedure for a party who has in good faith attempted to abide by that procedure, then union and management will suffer alike. It is the reasoned and thorough consideration of the merits of a dispute which is envisioned by the federal policy encouraging arbitration, not the summary disposition of claims on a purely procedural basis. This is not to say that a default "judgment" can never be entered against a party in an arbitrable dispute, for the arbitration mechanism must have some way of ensuring participation by all parties and of sanctioning the intransigent. However, where a party has made a good faith attempt to comply with the basic grievance procedures, as has Denton here, the Committee cannot dispose of the case so easily.[3]

In accordance with the above discussion, we deny the Union's motion for summary judgment to enforce the Committee's order reinstating Poulos. Accordingly, it is unnecessary to address the issue of interest payments on the back pay award. Furthermore, since we find that partial summary judgment for Denton is appropriate even without considering the deposition of Eugene McCarron, we will not consider the question of whether his deposition should be stricken.

In granting Denton's motion for summary judgment and vacating the order of the Permanent Joint Grievance Committee, we cannot compel "arbitration" *per se* at this point as requested in Denton's counterclaim. Article 18 of the collective bargaining agreement provides for arbitration only after the Permanent Joint Grievance Committee has issued a decision. As such, we find that it would be inappropriate to compel arbitration before the Committee has had a chance to hear the grievance on the merits. Accordingly, we compel the Committee to vacate its order and hear the Poulos grievance on its merits. Any further proceedings, of course, must be in accordance with the collective bargaining agreement.

In conclusion, the Union's motion for summary judgment is denied, and Denton's motion for summary judgment is granted as it relates to vacating the Permanent Joint Grievance Committee's order. The Committee is hereby ordered to proceed, upon proper notice to both parties, with a hearing on the merits of the Poulos grievance. It is so ordered.

----

**3.** We need not reach Denton's allegation that the Union's representative acted in bad faith by misleading the grievance committee at the initial hearing in implying that Denton was somehow not willing to participate in the proceedings. Even without such a finding, it is clear that Denton did not receive a fair opportunity to present its case before the Committee.