925 F.2d 1468
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Tommie L. SCALZITTI, Plaintiff-Appellant,
v.
PADDOCK PUBLICATIONS, INC., Defendant-Appellee.
 No. 90-2189.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 30, 1991.
Decided Feb. 13, 1991.
 
 Before BAUER, Chief Judge, and WOOD, Jr., and EASTERBROOK, Circuit Judges.
 
 Order
 
 1
 The magistrate judge recommended that the district judge enter summary judgment for the employer in this age discrimination case. The district judge did so, adopting the report and recommendation. After reading the briefs and listening to the oral argument, we conclude that Judge Lefkow's recommended decision accurately assesses the situation, and we affirm on the basis of her analysis, which we attach.
 
 AFFIRMED
 
 2
 TOMMIE L. SCALZITTI, Plaintiff, v. PADDOCK PUBLICATIONS,
 
 
 3
 INC., Defendant.
 
 
 4
 Plaintiff,
 
 
 5
 v.
 
 
 6
 PADDOCK PUBLICATIONS, INC.,
 
 
 7
 Defendant.
 
 No. 88 C 7018
 
 8
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF ILLINOIS EASTERN DIVISION
 
 9
 April 11, 1990.
 
 
 10
 To: The Honorable Ann C. Williams, United States District Judge.
 
 REPORT AND RECOMMENDATION
 Joan H. Lefkow, Magistrate:
 
 11
 Tommie L. Scalzitti ("Mrs. Scalzitti" or "plaintiff") brings this action against her former employer Paddock Publications, Inc. ("Paddock" or "defendant") for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621 et seq. The parties have completed discovery, and Paddock has moved for summary judgment under Fed.R.Civ.P. 56.
 
 Procedure on Summary Judgment
 
 12
 Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in the depositions, answers to interrogatories, admissions on file, and affidavits that are a part of the record. Fed.R.Civ.P. 56, Notes of Advisory Committee on Rules. The initial burden of proving there is no genuine issue of material fact is on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). To discharge this initial burden, the moving party need only point out to the court that there is an absence of evidence to support the non-moving party's case. Id. at 325, 106 S.Ct. at 2553. Where the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must prove that there exists a genuine dispute as to a material fact on that issue. Id. The non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific facts showing that there is a genuine issue for trial. Id. at 324. 106 S.Ct. 2553. While all factual inferences must be viewed in favor of the non-moving party, only reasonable inferences need be made. Hermes v. Hein, 742 F.2d 350, 353 (7th Cir.1984); Korf v. Ball State University, 726 F.2d 1222, 1226 (7th Cir.1984). A bare contention that an issue of fact exists is insufficient to create a factual dispute. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.1983).
 
 
 13
 In keeping with these guidelines, the court will state the facts in a light most favorable to plaintiff insofar as plaintiff's version is supported by documentation in conformity with Rule 56(e).
 
 Statement of Facts
 
 14
 Mrs. Scalzitti began work in 1965 in the circulation department of Paddock. Until an incident involving plaintiff's medical leave in spring 1987, Paddock was pleased with her job performance as reflected in written performance reviews for the two preceding years.
 
 
 15
 On March 9, 1987, Mrs. Scalzitti applied for and was granted a paid medical leave of absence until April 10. She completed and signed a medical leave form which provided, inter alia:
 
 
 16
 A Proof of Disability form must be completed by my physician and submitted at regular intervals. The Company may require a second opinion from a company appointed physician.
 
 
 17
 One week prior to the expiration date of the leave, I will contact the Human Resources Department to confirm my return to work date or request renewal of the leave. I understand that failure to return on or before the return date or failure to provide written approval of an extension will be considered a voluntary resignation. Prior to return I will submit a medical release from my physician.
 
 
 18
 Medical Leave of Absence Application. On April 10, Mrs. Scalzitti's original date to return to work, she requested an extension of her medical leave until April 27. This was not in compliance with the leave policy, which required that a request for an extension be submitted one week before the leave was to have expired.
 
 
 19
 On April 22, Ms. Sabados from Paddock's human resources department told Mrs. Scalzitti that the information submitted by plaintiff's physician, Dr. Muench, was insufficient.[1] Specifically, Ms. Sabados requested that the physician submit weekly progress reports outlining treatment, medication, the specific reason plaintiff could not perform her job, the progress necessary before plaintiff could return to work, and an anticipated return date. The information submitted by the doctor continued to be sketchy, indicating indefinite progress and an indefinite return to work date.[2] During an April phone conversation with Ms. Sabados, Dr. Muench explained that he usually releases a patient to return to work only after her physical condition improves and the patient feels she is ready to return.
 
 
 20
 On April 24, when Mrs. Scalzitti requested a second extension of her medical leave, she was told that her disability benefits would not continue past April 24 due to her physician's incomplete reports. Later, Paddock informed her that it was exercising its option to have her examined by a second physician. At Paddock's request, Mrs. Scalzitti was examined by Dr. Charman on May 6.
 
 
 21
 On May 8, Paddock received a letter wherein Dr. Charman described his analysis of Mrs. Scalzitti's physical condition. As is to be expected in litigation of this nature, Dr. Charman disagreed with Dr. Muench and found Mrs. Scalzitti fit to return to work. Dr. Charman did not necessarily agree with Dr. Muench's diagnosis of hypoglycemia, but, in any event, both doctors agree that hypoglycemia can be controlled by diet within one week.
 
 
 22
 On May 11, Ms. Sabados contacted Mrs. Scalzitti and informed her that, based on the second opinion provided by Dr. Charman, she was not considered disabled.[3] She told Mrs. Scalzitti she was expected to return to work the next day, May 12, and that, pursuant to the medical leave policy, failure to do so would result in Paddock concluding that she had abandoned her job. Mrs. Scalzitti did not return to work the next day.
 
 
 23
 On May 18, Paddock summarized in a letter the history of Mrs. Scalzitti's medical leave and the communications between Paddock and Mrs. Scalzitti, and confirmed Paddock's position that she had voluntarily abandoned her job. Mrs. Scalzitti's doctor released her for work on May 20. This release was sent to Paddock along with a letter from Mrs. Scalzitti wherein she sought to return to work. Paddock responded that her employment was already forfeit. Subsequently, plaintiff received documentation allowing her to continue her medical coverage at her own cost (under COBRA), a check for unused vacation days and documentation allowing her to withdraw her fully vested pension and profit sharing monies.
 
 
 24
 Mrs. Scalzitti's position remained vacant until June 21, when it was filled by a 51 year old employee hired by Paddock on March 8.
 
 
 25
 In May, 1987, Mrs. Scalzitti was 58 years of age. If she had remained employed by Paddock through her sixtieth birthday, another year and one-half, she would have been eligible for fully paid insurance benefits upon retirement.
 
 
 26
 Mrs. Scalzitti contends that Paddock discriminated against her due to her age. She also asserts two pendent state law claims for breach of contract based upon an employee handbook and for intentional infliction of emotional distress. The sparse facts relating to the pendent claims are not included in the statement of facts since, pursuant to the recommended disposition of this matter, the court should not retain jurisdiction over these claims.
 
 Conclusions of Law
 
 27
 The plaintiff in an age discrimination suit bears the ultimate burden of proving that age was a determining factor in her discharge. She must show that "but for" the employer's discriminatory motive, she would not have been fired. La Montagne v. American Convenience Products, Inc., 750 F.2d 1405, 1409 (7th Cir.1984). On a motion for summary judgment in a discrimination action, the central issue the court must decide is whether the submissions of the parties give rise to a reasonable inference of discriminatory motive. Parker v. Federal National Mortgage Association, 741 F.2d 975, 976 (7th Cir.1984); Cebula v. General Electric Co., 614 F.Supp. 260, 267 (N.D.Ill.1985).
 
 
 28
 Where the plaintiff is relying on circumstantial evidence to prove age discrimination, she must establish a prima facie case pursuant to McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), as adapted for ADEA claims, e.g., Grafenhain v. Pabst Brewing Co., 827 F.2d 13 (7th Cir.1987). Plaintiff's prima facie case must demonstrate that (1) that she was within the protected class, (2) she was performing her job well enough to meet her employer's legitimate expectations, (3) she nevertheless was discharged, and (4) her employer sought a replacement for her, id. at 17 n. 5, or she was replaced by a younger person.[4] Evidence of all of the elements raises a rebuttable presumption of age discrimination. Defendant may rebut the presumption of age discrimination by articulating a lawful reason for the discharge. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094. Once rebutted, plaintiff must show that the articulated reasons are a pretext or not worthy of credence. Id. at 255-56, 101 S.Ct. at 1095.
 
 
 29
 1. Mrs. Scalzitti Has Established a Prima Facie Case
 
 
 30
 Mrs. Scalzitti has succeeded in establishing each of the four factors necessary to a prima facie case: (1) she was 58 years of age at the time of the incidents alleged and is within the protected age class; (2) both sides agree that Mr. Scalzitti performed her work satisfactorily and met Paddock's expectations in this regard; (3) although defendant argues that by the very terms of the medical leave policy to which she agreed, Mrs. Scalzitti's termination was a voluntarily resignation, for purposes of a summary judgment motion, the court must assume her interpretation that she was discharged; (4) plaintiff's employer sought a replacement for her and she was replaced by a younger person.
 
 
 31
 2. Paddock Has Articulated a Lawful Reason for the Discharge
 
 
 32
 The analysis then focuses on whether defendant has proffered a lawful reason for the discharge. Paddock proffers evidence that plaintiff failed to submit the appropriate medical documentation for her disability and that she failed to return to work after an independent physician deemed her physically able and after she was warned her job was in jeopardy. The medical leave policy was spelled out on the medical leave application which plaintiff signed. The terms included a provision that "failure to obtain written approval for an extension of the leave will be considered a voluntary resignation." In addition, Ms. Sabados told Mrs. Scalzitti that her paid leave would only be extended until April 24 based on the insufficient documentation supplied by her doctor. On May 11, Ms. Sabados informed plaintiff that the second physician had determined she was able to perform her work, and Paddock expected her to return to work the next day.
 
 
 33
 Mrs. Scalzitti argues that Paddock's expectation that she return to work on one day's notice was not reasonable. There is, of course, no requirement under ADEA that an employer's conduct be reasonable. The prohibition is against discriminatory conduct. Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir.1980). Unreasonable conduct, however, may lend weight to other evidence showing discrimination. Id. Here, however, no reasonable jury could infer that Paddock's conduct toward Mrs. Scalzitti was unreasonable. Paddock's call telling Mrs. Scalzitti to return to work on May 12 cannot be viewed in a vacuum. She had been on disability leave for two months. She knew by April 24, the date Paddock stopped paying for her disability leave, that there was at least a question about the validity of her disability. She also knew that she was examined by Dr. Charman for this same reason. The call seeking her return to work came two to three weeks after these events, giving her plenty of warning. Under these circumstances Paddock's position, although perhaps not considerate, is not unreasonable.
 
 
 34
 Mrs. Scalzitti also argues that she did not realize her job was in jeopardy if she did not return to work on May 12. The medical leave form and the extensions for leave signed by Mrs. Scalzitti state that failure to submit appropriate documentation and failure to otherwise comply with the medical leave policy will result in a voluntary resignation. Plaintiff's own brief quotes Ms. Sabados' notes of her May 11 phone conversation with plaintiff, which do indicate that Ms. Sabados made clear the consequences to plaintiff should she not comply. Plaintiff does not deny this conversation. Mrs. Scalzitti's subjective lack of understanding may be true, but the pertinent focus is on Paddock's actions. Paddock advised plaintiff of the consequences of noncompliance with the medical leave policy. It had no reason to believe she did not understand what was said.
 
 
 35
 3. Plaintiff Has Failed to Rebut the Proffered Reason or Establish Pretext.
 
 
 36
 Lastly, Mrs. Scalzitti has the opportunity to rebut Paddock's proffered reason by producing evidence that the proffered reason is not worthy of credence or is a pretext. Mrs. Scalzitti has not submitted evidence that the proffered reason is not worthy of credence, for example, that she did, in fact, comply with the medical leave policy. Neither can she establish pretext. Mrs. Scalzitti offers as evidence of pretext her belief that she was terminated because of her age because she was approaching the vesting of insurance benefits. There is, however, no direct or circumstantial evidence pointing to this as a motive for Paddock's conduct as opposed to the proffered motive. "[P]laintiff was required to show more than merely the fact that [s]he was within the protected age group and that [s]he was adversely affected by a decision of management relating to conditions of [her] employment. (cite omitted)." Huhn v. Koehring Co., 718 F.2d 239, 245 (7th Cir.1983).
 
 
 37
 The [pertinent] question is ... whether [plaintiff] has come forward to refute the articulated, legitimate reasons for his discharge. In this regard, [plaintiff] must do more than challenge the judgment of his superiors through his own self-interested assertions. [cite omitted] "[The employee's] perception of himself, however, is not relevant. It is the perception of the decision maker which is relevant." Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir.1980).
 
 
 38
 Dale v. Chicago Tribune Co., 797 F.2d 458, 464-65 (7th Cir.1986).
 
 
 39
 It is concluded, then, that although Mrs. Scalzitti could establish her prima facie case, Paddock has articulated a lawful reason for the discharge. Mrs. Scalzitti is unable to demonstrate that Paddock's articulated reason is pretextual or not worthy of credence.
 
 Recommendation
 
 40
 There is no issue as to any material fact and it is recommended that Paddock's motion for summary judgment on the ADEA claim be granted and that the pendent state claims be dismissed for want of jurisdiction. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966) (Ordinarily, if the federal claims are dismissed before trial, the state claims should be dismissed as well); Kephart, 630 F.2d at 1225 ("In view of the dismissal of plaintiff's federal claims, there is no longer pendent jurisdiction over his claims under state law.").
 
 
 41
 Written objection to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable Ann C. Williams within ten days after service of this Report and Recommendation. See Fed.R.Civ.P. 72(b). Failure to object will waive any such issue.
 
 
 42
 Respectfully submitted.
 
 JOAN HUMPHREY LEFKOW
 United States Magistrate
 Dated: April 11, 1990
 
 
 [1]
 The doctor's diagnoses were hypertension, vaginitis, skin rash and anxiety reaction. During a conversation with Ms. Sabados on April 21, the doctor indicated the primary diagnosis was anxiety. Although no physical problems prevented her from working, Dr. Muench did not suggest Mrs. Scalzitti see a psychiatrist. He anticipated she would not be able to return to work for another month since she did not feel capable of working
 
 
 [2]
 On May 1, the doctor indicated "no change" in plaintiff's progress. However, he changed the diagnosis to one, hypoglycemia, eliminating the four prior diagnoses. He indicated that the treatment for plaintiff's condition was a diet regulating sugar intake
 
 
 [3]
 During this conversation plaintiff questioned Dr. Charman's determination that she was fit for work since he did not have all of her laboratory test results. Ms. Sabados responded that she was told to bring all of her records with her at the time of the exam. Since she had failed to do this, Dr. Charman based his opinion on the information he had available
 
 
 [4]
 There is an apparent conflict in the Seventh Circuit regarding the fourth element of plaintiff's prima facie case in an age discrimination case. Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1364 n. 5 (7th Cir.1988) and Weihaupt v. American Medical Association, 874 F.2d 419, 427 n. 2 (7th Cir.1989). Some cases state that plaintiff must merely prove that defendant sought a replacement for plaintiff, while other cases indicate that plaintiff must have been replaced by a younger person. Since plaintiff can satisfy either criteria, this uncertainty will not affect the outcome of this Report and Recommendation